IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:10-CV-12-F

JOSEPH DACAR, Individually and on Behalf )
of All Other Persons Similarly Situated,       )
                                   Plaintiff,          )
          v.                                             )
SAYBOLT LP, *A Foreign Limited Partnership,* )
CORE LABORATORIES LP, *A Foreign*           )          O R D E R
*Limited Partnership*, and CORE                   )
LABORATORIES, INC., *A Foreign*               )
*Corporation*,                                        )
                              Defendants.           )

Plaintiff Joseph Dacar instituted this action by Complaint [DE-1], filed on January 26,

2010, seeking monetary and injunctive relief against the defendants, Saybolt LP, Core

Laboratories LP, and Core Laboratories, Inc.[1] (hereinafter collectively, "defendants"), alleging

violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq*.

Specifically, defendants failed to pay him and other "similarly situated" current and former oil,

gas and chemical inspectors ("OGC inspectors") adequate overtime compensation. *See*

Complaint at ¶¶ 1, 7. Dacar alleges that he worked for Saybolt as an OGC inspector from "in or

about 1992" until "April 2007," at its Wilmington, North Carolina facility. *Id*. at ¶ 13. Dacar

continues to reside in Wilmington, which is located in the Eastern District of North Carolina.

Shortly after the Complaint was filed, the court began receiving Notices of Consent to Join

Collective Action (hereinafter "Consent Notices") from individuals who allegedly are similarly

---

[1]   Core Laboratories LP's Manager of Human Resources, Suzanne Lang, states in her
Affidavit [DE-66], Exh. A, ¶ 3, that "Core Laboratories, Inc." was converted to "Core
Laboratories LP" in 2001. Therefore, "Core Laboratories, Inc." no longer exists. *Id*. References
herein to "Core Labs" is to Core Laboratories LP.

situated to Dacar and who wish to be represented by plaintiffs' Davie, Florida law firm, in a collective action against the defendants.

The defendants filed their Answer [DE-23] on April 1, 2010, raising a number of defenses, including expiration of the statute of limitations, and absence of commonality, typicality and numerosity requirements. Dacar shortly thereafter filed a "Motion to Strike" [DE-25] five of the defendants' affirmative defenses, followed by a Motion to Certify Class [DE-28]. Both motions were opposed by the defendants. *See* [DE-32 & 43], respectively. By order of June 24, 2010, [DE-51] the undersigned referred the Motion to Strike and Motion to Certify Class to the magistrate judge for preparation of a Memorandum and Recommendation (hereinafter, "M&R").

On July 20, 2010, Dacar filed a Motion for Leave to File Amended Complaint [DE-53] in which he sought to add two additional named plaintiffs in order to avoid potential statute of limitations problems. Less than a month later, Dacar filed a Motion to Compel Better Responses to Interrogatories [DE-59], which motion was referred for ruling to the magistrate judge. The defendants opposed these additional motions, *see* [DE-61 & -69], and filed their own Motion to Change Venue [DE-65]. Meanwhile, the magistrate judge was considering the motions to strike and to certify, and prospective opt-in plaintiffs continued to submit Consent Notices.

On August 23, 2010, the magistrate judge filed his M&R recommending that Dacar's Motion to Strike be allowed in part and denied in part, and that Dacar's Motion to Certify be allowed. *See* [DE-70]. The defendants filed objections [DE-77] to the M&R, and Dacar responded in opposition [DE-81] to the Motion to Change Venue. Consent Notices continued to be filed.

The steady stream of new motions, responses and replies has prevented a more systematic approach to management of this case. As a result, a myriad of motions now are

2

pending, which the court will address in the most logical, rather than chronological,

progression. Toward that end, the appropriate venue of this litigation is the natural starting

point.

## MOTION TO CHANGE VENUE [DE-65]

Dacar seeks certification of this case as a collective action under 29 U.S.C. § 216(b),

describing the proposed class as

> all Oil, Gas and Chemical Inspectors ... who are or were formerly employed by
> Defendants in the United States at any time since January 5, 2007, to the entry of
> judgment in this case (the "Collection Action Period") who received inadequate
> overtime compensation at rates less than one and one-half times their regular
> pay rate for all hours worked in excess of forty per workweek (the "Collective
> Actions Members"), as a result of Defendants' illegal "Chinese Overtime."

Complaint [DE-1] at ¶ 7; *see also id.*, at ¶ 1. The geographical scope of Dacar's proposed class is

nationwide, and he estimates there are approximately 1,000 members of the class. *Id.* at ¶ 8.

Dacar explains that he correctly filed this action in the Eastern District of North Carolina

because he was employed by the defendants here during the relevant period,[2] and he continues

to reside here.

The defendants contend, however, that the matter should be transferred to the United

States District Court for the Southern District of Texas, Houston Division, pursuant to 28 U.S.C.

§ 1404(a) on the ground of *forum non conveniens*. Core Labs' principal place of business and

main United States headquarters is located in Houston, Texas. *See* Lang Affidavit, [DE-66],

Exh. A, at ¶ 4. Core Labs employs approximately 350 people at the Houston facility where its

corporate officers, upper-level management, Payroll Manager, Manager of Human Resources,

---

[2] According to defendants' Human Resources Manager Suzanne Lang, Dacar was
employed by Saybolt as an OCG Inspector from December 1, 1993 until April 13, 2007, at its
Wilmington, North Carolina facility. *See* [DE-66], at Exh. A, ¶¶ 9 - 10. From February 3, 2001,
until the end of his employment on April 13, 2007, Dacar was an Inspection Field Supervisor.
*See id.*, at ¶ 10.

3

Director of Human Resources and entire Human Resources Department are housed and its business records are located. *See id.*

The defendants explain that Saybolt LP is a Core Labs company and, therefore, is governed and administered by Core Labs' Human Resources Department. Although Saybolt LP has 25 facilities in the United States and has operations in Alabama, California, Florida, Georgia, Indiana, Kentucky, Louisiana, Maryland, Massachusetts, Mississippi, New Jersey, North Carolina, Pennsylvania, Tennessee, Texas and Washington, its principal place of business also is in Houston, Texas. *See id.* ¶¶ 5-6. Dacar's lead counsel, Morgan & Morgan PA, is located in Davie, Florida, with local counsel in this district, as required by Local Rule 83.1(d) (E.D.N.C.). The defendants' lead counsel, Shook, Hardy & Bason LLP, is located in Houston, TX, and they, too, have employed local counsel.

A. *Standard of Review*

A district court may transfer any civil action to any other district or division where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The policy underlying the statute is to "prevent the waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Once the court determines that the plaintiff could have filed the action in another district, the court's inquiry focuses on whether the balance of justice and convenience weighs in favor of transfer. *See The Fox Group, Inc. v. Cree, Inc.*,____ F. Supp. 2d ____, 2010 WL 4371432, slip op. at *2 (E.D. Va. Oct. 25, 2010) (citations omitted).

A motion to transfer is a "case-specific inquiry that demands a holistic analysis of convenience and justice." *Memsys, Inc. v. Act Tech. Seed Fund, L.L.C.*, No. 5:09-CV-516-FL,

4

2010 WL 2402846, at *2 (E.D.N.C. June 14, 2010).[3] In making this inquiry, courts often

consider the following factors: (1) the plaintiff's initial choice of forum; (2) the residence of the

parties; (3) the ease of access to the sources of proof; (4) the convenience of the parties and

witnesses; (5) the cost of obtaining the attendance of the witnesses; (6) the availability of

compulsory process; (7) the possibility of a view by the jury; (8) the enforceability of a

judgment; (9) other practical problems that make trial expeditious and inexpensive; (10) the

interest in having local controversies decided at home and at home with the state law that

governs; and (11) the interests of justice. *See id.*; *see also Galustian v. Peter*, 591 F.3d at 732,

n.7 (listing "public" and "private" considerations) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501

(1947)). Ultimately, the decision whether to transfer under § 1404 is committed to the sound

discretion of the trial court. *Memsys, Inc.*, 2010 WL 2402846, at *2 (citing *Southern Ry. Co. v.

Madden*, 235 F.3d 198, 201 (4th Cir. 1956)).

B. *Analysis*

### This Lawsuit "Might Have Been Brought" in Houston, Texas

The defendants contend, and Dacar does not dispute that this lawsuit, which is premised

entirely on federal question subject matter jurisdiction under the FLSA, "might have been

brought" in the Houston Division of the United States District Court for the Southern District of

Texas. *See* 28 U.S.C. § 1404(a) (limiting transfer to a district or division where the civil action

might have originally been filed). The court finds that this action could have been brought

initially in the Southern District of Texas, Houston Division. Having established that venue is

proper in the Southern District of Texas, Houston Division, the issue next is whether transfer is

justified under § 1404(a).

---

[3] The undersigned recognizes that the Fourth Circuit Court of Appeals disfavors citation to unpublished decisions. *See* Local Rule 32.1 (4th Cir.). However, as that court recently acknowledged, "much of our jurisprudence on the question of *forum non conveniens* has been in unpublished opinions." *Galustian v. Peter*, 591 F.3d 724, 731, n.5 (4th Cir. 2010).

The Balance of Convenience and Justice

The defendants contend and Dacar denies that the balance of convenience to the witnesses and parties and the interest of justice, together with the additional relevant factors, establish that transfer to the Houston Division of the Southern District of Texas is proper.

### 1. Dacar's Choice of Forum

Dacar explains that he filed the instant lawsuit in the Eastern District of North Carolina, Southern Division, because he lives here and worked here for Saybolt during the relevant period. He explains further that he now is retired and living primarily on his Social Security income. Although a plaintiff's choice of forum typically is accorded deference by the court, that factor carries little weight here for two reasons. *See Memsys, Inc.*, 2010 WL 2402846, at *3. First, Dacar's choice of a North Carolina forum is entitled to less deference because he attempts to bring this FLSA suit as a nationwide collective action. Dacar's purported collective action encompasses a projected 1,000 former or current Saybolt OGC inspectors who worked in facilities located across the United States, from Florida to Washington. *See Espenscheid v. DirectSat USA, LLC*, 708 F. Supp. 2d 781, 787 (W.D. Wis. 2010) ("[B]ecause plaintiffs have brought this [FLSA] action in the hopes of representing a proposed national class, their choice of forum is entitled to less deference than it would be in an individual action"); *Amick v. American Express Travel Related Servs. Co., Inc.*, No. 09 Civ. 9780 (AKH), 2010 WL 307579, at *2 (S.D.N.Y. Jan. 26, 2010) (explaining that plaintiff's decision to pursue his claims in New York was "accorded a lesser degree of deference," in part, because he asserted claims on behalf of a nationwide FLSA collective action).

Thus, while Dacar lives in southeastern North Carolina and received his compensation in this district, his decision to seek relief through a nationwide collective action under the FLSA militates against a more deferential view of his choice of forum. *See Farrior v. George Weston Bakeries Distrib., Inc.*, No. 08-CV-2705 (JFB) (WDW), 2009 WL 113774, at **3-4 (E.D.N.Y.

6

Jan. 15, 2009) (determining that plaintiffs' decision to have the FLSA lawsuit certified as a collective action reduced deference to plaintiffs' choice of forum because certification would "result in plaintiffs being situated around the nation").

Secondly, the defendants contend that Texas, not North Carolina, is "the site of the conduct giving rise to the complaint." *Memsys, Inc.*, 2010 WL 2402846, at *3 (noting that when the plaintiff's chosen forum is not the site of the conduct giving rise to the complaint, the plaintiff's choice of forum is given less weight). Dacar's Complaint alleges that "Defendants had a *nationwide* and *company-wide policy and practice* of refusing to pay proper overtime compensation to their employees for their hours worked in excess of forty hours per week." [DE-1], at ¶ 27 (emphasis added). This allegation -- that Defendants refused to pay OGC inspectors in compliance with the FLSA at their facilities across the United States -- undercuts Dacar's assertion that Wilmington, North Carolina, is the forum where the conduct giving rise to Dacar's Complaint occurred. The defendants explain that no company policies pertaining to wages, hours, and overtime were ever devised in North Carolina, or at any other Saybolt facility. *See* [DE-66], Exh. A, at ¶ 6.

Instead, the national compensation policies and practices that allegedly violate the FLSA and form the basis of Dacar's claims originated and were decided at defendants' principal headquarters in Houston. According to the defendants, Core Lab's Human Resources Department in Houston is exclusively responsible for formulating and overseeing all policies and procedures relating to wages, hours, and overtime for Saybolt employees. *See id.* Defendants explain that all employee pay is processed, prepared, and distributed from the Houston headquarters, and paycheck stubs and W-2 Earnings Summaries bear Core Lab's Houston address. *See, e.g.*, [DE-66], Exhs. C & D.

The defendants do not dispute that Dacar worked out of the Wilmington, North Carolina, Saybolt office, or that he received his paycheck here. However, in light of the

7

nationwide reach of both the defendants' alleged activities and Dacar's definition of his proposed class, Dacar's choice of his home district carries much less weight than it otherwise might. As the defendants point out, Texas has a stronger connection to the operative facts raised in Dacar's Complaint than North Carolina because Dacar's claims focus on defendants' national, company-wide overtime policies and not site-specific policies of the Wilmington, North Carolina facility. Accordingly, this factor weighs in favor of transfer.

### 2. The Forum More Convenient for the Parties

The second factor, the convenience of the parties, also favors transfer to a Texas forum. When evaluating the convenience of the parties, the logical and relevant starting point is a consideration of the residence of the parties. *See JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 735 (E.D. Va. 2007). As of the morning of January 24, 2011, Dacar is the only party to this suit currently residing in North Carolina. Excluding opt-in plaintiffs Killen, who now apparently resides in Maryland, and Whitelaw, who has worked in Pennsylvania for less than a year and whose employment does not overlap Dacar's, the remaining 40 opt-in plaintiffs that have submitted Consent Notices are located in Texas or in next-door Louisiana. *See* [DE-66], Exh. A; [DE-86 through -98, 100-101]; *see also Memsys, Inc.*, 2010 WL 2402846, at *3 (transferring action from the Eastern District of North Carolina to the Eastern District of Texas because "it would be both less expensive and more efficient to . . . transfer the case to that district" "[g]iven the overwhelming number of parties residing [there]").

The court recognizes and takes seriously into consideration Dacar's claims of the extreme hardship and inconvenience that litigating outside the Eastern District of North Carolina would impose on him. As he points out, " 'it is always less convenient for a party to litigate outside of his or her home state.' " Memorandum, [DE-81], at p. 7 (quoting *Reynolds Foil, Inc. v. Pai*, No. 3:09CV657, 2010 WL 1225620, slip op. at * 9 (E.D. Va. March 25, 2010)).

8

Although the court examines the residences of the entire potential class of FLSA plaintiffs, not just the residences of those plaintiffs who have opted-in at this point, the facts before the court here suggest that Texas still is the more convenient forum for the parties. Texas, defendants explain, unlike North Carolina, is more centrally located in the United States and in relation to Saybolt's regionally diverse United States facilities. Some opt-in plaintiffs – including those presently before the court and those who may opt-in later if conditional certification is approved – will be required to travel whether this case is transferred to Texas or remains in North Carolina. *See Farrior*, 2009 WL 113774, at *6 ("In the instant case, transfer of the case would not shift the inconvenience to the plaintiffs; rather, transfer will result in little, if any, additional inconvenience on plaintiffs, while at the same time making the forum substantially more convenient for defendant [because defendant's headquarters are located in the transferee forum]"). Therefore, the court finds that the convenience of all the parties strongly weighs in favor of transfer to Texas.

### 3. The Forum More Convenient for the Witnesses

Convenience of the witnesses also weighs heavily in favor of transferring Dacar's lawsuit to Texas. *See North Carolina v. Blackburn*, No. 5:06-CV-300-D, 2007 WL 4458302, at *3 (E.D.N.C. Dec. 14, 2007) (observing that the convenience of witnesses is often cited as the most important factor in a motion to transfer under § 1404). To refute Dacar's claims at trial, the defendants explain that they necessarily will rely on the testimony of their executive officers, upper-level management, Human Resources Department personnel, and payroll clerks – all of whom are exclusively employed at Core Lab's Houston, Texas headquarters. Defendants

9

specifically identified Suzanne Lang,[4] Core Lab's Manager of Human Resources, Dawn Weis,[5] Core Lab's Payroll Manager, and Gwen Schreffler,[6] Core Lab's Director of Human Resources, as key witnesses. Furthermore, Lang, Weis, and Schreffler most likely also will be critical witnesses for Dacar.

Defendants contend that, because the key witnesses that will testify to defendants' payroll practices and company policies regarding overtime compensation for OGC inspectors are located in Texas, it will be much more convenient, cost-effective, and efficient to have these witnesses readily available in the litigation forum instead of requiring them to travel there. *See Farrior*, 2009 WL 1133774, at \*4 (holding that because most of the witnesses that could testify to defendants' formulation of overtime compensation policies and practices worked at the defendants' corporate headquarters in Pennsylvania, the convenience of the witnesses factor "strongly" favored transfer to Pennsylvania); *Evancho v. Sanofi-Aventis U.S., Inc.*, No. C 07-00098 SI, 2007 WL 1302985, slip op. at \*3 (N.D. Cal. May 3, 2007) (recognizing that "a large number of critical witnesses live and work" near defendant's headquarters, including "the key operational and administrative personnel who would testify as to payroll practices and company policies regarding the positions at issue," and deciding that convenience of witnesses, the greater number of which lived in the proposed transferee district, weighed substantially in favor of transfer).

---

[4]  According to the defendants, Lang has personal knowledge concerning Saybolt's employment records, personnel policies and procedures regarding compensation, personnel record-keeping procedures, and customary employment practices and will offer material testimony to such. *See* [DE-66], Exh. A, Lang Affidavit at ¶ 7.

[5]  Weis has personal knowledge of and will offer material testimony pertaining to Saybolt's personnel and payroll records. *See* [DE-66], Exh. B, Weis Affidavit at ¶ 1.

[6]  Defendants represent that Schreffler has personal knowledge of and will offer further material testimony about the topics of Lang's and Weis's testimony. *See* [DE-66], at p. 14-15.

Additionally, the defendants point out that it may be necessary for them or Dacar to subpoena non-party Janell Lerum to testify. Lerum allegedly previously worked as Core Lab's Human Resources Manager from April 2, 1979, until January 5, 2007, and resides in Texas. Defendants contend that Lerum has personal knowledge concerning Saybolt's employment records, personnel policies and procedures regarding compensation, personnel record-keeping procedures, and customary employment practices and will testify to such. If this action remains in North Carolina, Lerum is outside the subpoena powers of this Court.

The defendants point out that live testimony is especially important in this case because Dacar alleges a willful violation of the FLSA. Thus, a jury's ability to assess non-party witnesses' credibility will be hampered if their testimony is offered only by deposition. *See Gilbert*, 330 U.S. at 511 ("Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is . . . not satisfactory to court, jury or most litigants."); *Blackburn*, 2007 WL 4458302, at *3 (noting that the inability of the transferor court to compel a non-party witness's attendance at trial weighed in favor of transfer because the jury should be able to personally observe the witness's testimony).

The defendants have carried their burden of identifying particular critical witnesses and the gist of their testimony that would be seriously inconvenienced by trial in North Carolina. In opposing transfer, Dacar has not named any witnesses (other than himself) for either party who would be inconvenienced if this collective action were transferred to the district where the defendants are headquartered and in or near which many critical witnesses are located. Nor has Dacar identified any non-party witness who would be unavailable by subpoena in the Southern District of Texas. Thus, the convenience of the witnesses, in addition to the cost associated with obtaining the attendance of these witnesses, strongly favors a Texas forum.

### 4. Access to Relevant Evidence

The fourth factor -- access to sources of proof -- weighs slightly in favor of transferring this litigation to Texas, because Houston is the single most likely source of relevant documents. *See JTH Tax, Inc.*, 482 F. Supp. 2d at 737 (observing that one of the most important factors in determining whether transfer is appropriate is the relative access to sources of proof). Here, defendants explain, Core Lab's Houston headquarters is the repository for the original employment and payroll records relevant to Dacar, the opt-in plaintiffs, and the putative collective action members' claims. *See* [DE-66], Exh. A, Lang Affidavit at ¶ 6. According to affidavits submitted in support of the defendants' motion to transfer, all of Saybolt's facilities throughout the continental United States submit time, attendance, and expense reports to Core Lab's Houston headquarters for processing. Employee pay then is prepared and distributed from corporate headquarters in Houston, where the payroll records are maintained. *See id.* In addition to payroll records. the policies and practices related to human resources, compensation, and the OGC inspector positions were generated at Core Lab's principal headquarters in Houston and are currently maintained there. *Id.*

Although Dacar, the opt-in plaintiffs, and putative collective action members would claim that they also possess evidence relevant to their claims, these individuals are located throughout the country. The defendants explain that transferring this case to Houston will minimize the need for voluminous document discovery in numerous locales because Core Lab's principal headquarters in Houston is the most likely (and only central) source of relevant documents. *See Earley v. BJ's Wholesale Club, Inc.*, No. 06 Civ. 3529 (WHP) 2007 WL 1624757, slip op. at *3 (transferring plaintiff's nationwide FLSA class action from New York to Massachusetts, in part, because "the single most likely source of relevant documents is Defendant's headquarters in Massachusetts because that is where Defendant's corporate policies are determined").

12

Dacar contends that the location of documentary evidence in Houston should be accorded little weight in this day of electronic communication and data storage. *See* [DE-81], at pp. 10-11, citing cases. The court agrees that the physical site of document storage and the parties' access to records does not weigh heavily in favor of transfer, but it favors more than disfavors it.

### 5. The Remaining Relevant Factors

Finally, the remaining relevant private and public interests support transfer of this action to Texas. For instance, although a jury view is unlikely to be helpful in this case, " 'jury duty is a burden that ought not be imposed upon people of a community which has no relation to the litigation[.]' " *Galustian*, 591 F.3d at 732, n.7 (quoting *Gilbert*, 330 U.S. at 508). Although Dacar disagrees, the court finds, under the circumstances described by the parties, that the Southern District of Texas possesses a far greater local interest in this litigation than does the Eastern District of North Carolina. Thus far, the only connection this proposed collective action has to North Carolina is the named plaintiff's residence and past employment here.

The court also does not find that a transfer of this action to the Southern District of Texas merely would amount to shifting the burden of inconvenience from the corporate defendants to the retired plaintiff. Dacar relies heavily on the disparity between the resources available to him compared with those of the defendants to argue that the "relative means of the parties" weighs heavily against transfer. *See* [DE-81], at pp. 9-10. The court *does* consider this disparity in weighing the factors relevant to its determination whether to transfer this action, but does not find that it carries the same impact as it did, for instance, in *Charles v. Bradley*, No. 5:08-CV-124-F, 2009 WL 1076771 (E.D.N.C. April 21, 2009). In *Charles*, the undersigned found

13

that the gross disparity in the parties' resources strongly weighs in favor of
respecting Charles's choice of the Eastern District of North Carolina. Charles, an
alleged brain-damaged unemployable war veteran, seeks redress against

a leading global engineering, construction and services company
supporting the energy, hydrocarbon, government services and civil
infrastructure sectors.

*Id.*, slip op. at *4 (citation omitted). Unlike Charles, Dacar has filed his lawsuit as a proposed

collective action on behalf of hundreds of current and former employees of the defendants. The

financial impact, not only on Dacar, but also on those currently nameless potential opt-in

plaintiffs must be considered. Charles, on the other hand, was a sole plaintiff suing defendants

including Kellogg, Brown & Root Services, Inc., and Halliburton Energy Services, Inc.

Indeed, as Dacar has urged in relation to the "convenience of the parties" factor, opt-in

plaintiffs may appear from a number of states, and consideration also must be afforded to their

convenience. To date, Dacar is the only plaintiff claiming residence in North Carolina,

although the court recognizes that future Consent Notices may reveal others. From a strictly

geographical standpoint, then, it is undeniable that Texas is more "central" than southeastern

North Carolina for the potential thousand opt-in plaintiffs that may join Dacar's proposed

collective action. It would be more financially viable for far-flung opt-in plaintiffs to litigate in a

relatively central location than to travel to an extreme east coast corner of the country.

Additionally, there is no suggestion that a transfer to the Southern District of Texas would

jeopardize the enforceability of judgments. Indeed, it would not be unreasonable to assume

that judgments rendered in the districts where assets are located might even be easier to

enforce. These factors weigh heavily in favor of transfer under § 1401(a).

Considerations of "local law" are inapplicable, as Dacar's claims are grounded solely on

alleged violations of federal law. His Complaint raises no questions of North Carolina law, and

these is no suggestion that a federal court sitting in Texas is not equally competent to adjudicate

Dacar's federal claims. *See Abushalieh v. Am. Eagle Exp., Inc.*, 716 F. Supp. 2d 361, 368 (D.N.J.

2010) (finding the public factors supported transferring plaintiffs' FLSA collective action, in part, because "[t]his case raises no state law claims, so there is no question of local expertise"); *Blake v. Family Dollar Stores, Inc.*, No. 2:07-CV-361, 2007 WL 1795936, slip op. at \* 3 (transferring FLSA collective action from Ohio to North Carolina where the employer was headquartered and noting that all federal courts "are competent to consider causes of action under federal statutes").

Finally, a transfer will not significantly disrupt the litigation or result in a waste of judicial resources. Although the litigation is further advanced than would be ideal in deciding whether to transfer venue, the court is convinced that nearly all the pertinent factors weigh heavily in favor of transfer to the more convenient forum, the Southern District of Texas. The potential for logistical hurdles and fiscal challenges certainly was a factor weighed by Dacar and his counsel in electing to pursue a collective action. The court finds that transfer to a more geographically centralized forum which also is the location of the defendants, certain identified key witnesses, and probably most of the evidence. best serves the important private and public interests relevant to venue selection. The defendants' Motion to Transfer Venue to the Southern District of Texas, Houston Division [DE-65], is ALLOWED.

## OBJECTIONS TO MEMORANDUM & RECOMMENDATION [DE-70]

The defendants have filed objections to the Magistrate Judge's M&R [DE-70], filed on August 23, 2010. Specifically, they object to the proposed findings that their objections and arguments opposing conditional certification are premature and insufficient, and that Dacar has made a sufficient showing that the potential class members are similarly situated. *See* [DE-77], at p. 3. Dacar contends the M&R is correct and urges the court to adopt it.

The district court must conduct a *de novo* determination of those portions of a magistrate judge's Memorandum and Recommendation to which timely and specific objections

15

are made. *See* 28 U.S.C. § 636(b)(1)(C). The court may accept, reject, or modify the findings or recommendations. *See id.*

A. *Motion to Strike [DE-25]*

The defendants have not objected to the magistrate judge's findings and recommendation that Dacar's Motion to Strike be allowed as to the defendants' request for attorney's fees, or to the following affirmative defenses stated in the Answer: Thirty-Seventh, Thirty-Eighth, Fortieth, and Forty-Eighth. The court's *de novo* review of the M&R, together with the defendants' representation that they do not oppose the recommendation, leads the court to conclude that the M&R is correct and in accordance with the law in this regard. Accordingly, the portion of the M&R recommending that the defendants' request for attorneys fees and the Thirty-Seventh, Thirty-Eighth, Fortieth, and Forty-Eighth affirmative defenses be stricken is ADOPTED. It is ORDERED that Dacar's Motion to Strike is ALLOWED as to those portions of the Answer [DE-23], but is DENIED as to defendants' Fifty-First affirmative defense.[7]

B. *Motion for Certification of Collective Action [DE-28]*

In light of the court's determination that transfer of this action to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a) is strongly supported by application of the record facts to the operative factors, the court DECLINES to adopt the magistrate judge's recommendation that such certification be granted. Rather, as in *Evancho*, 2007 WL 1302985, slip op. at *4, ruling on Dacar's Motion for Certification of Collective Action [DE-28] is DEFERRED pending transfer to the Southern District of Texas, Houston Division.

---

[7] Dacar did not object to the magistrate judge's recommendation that the Motion to Strike be denied as to the Fifty-First affirmative defense.

## REMAINDER OF PENDING MOTIONS

Likewise, ruling on all other motions pending in this case hereby is DEFERRED pending

transfer to the Southern District of Texas, Houston Division.

## SUMMARY

The defendants' Motion to Change Venue [DE-65] is ALLOWED.  The Clerk of Court is

DIRECTED to transfer this case to the Southern District of Texas, Houston Division, pursuant

to 28 U.S.C. § 1404(a).

The magistrate judge's M&R is ADOPTED insofar as it recommends that Dacar's Motion

to Strike [DE-25] be:

  • ALLOWED as to the defendants' request for attorney's fees, and as to

affirmative defenses Thirty-Seven, Thirty-Eight, Forty, and Forty-Eight; and

  • DENIED as to the defendants' Fifty-First affirmative defense.

The court DECLINES to adopt the magistrate judge's recommendation that Dacar's

Motion for Certification of Collective Action [DE-28] be allowed.  Ruling on that [DE-28], and

Dacar's other pending motions [DE-53 and -59] is DEFERRED pending transfer of this case to

the Southern District of Texas, Houston Division.

SO ORDERED.

This, the __24th__ day of January, 2011.

James C. Fox

JAMES C. FOX
Senior United States District Judge

17