```
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF TEXAS
 2                         HOUSTON DIVISION

 3
     JOSEPH DACAR, ET AL,         )
 4                                )
              Plaintiffs,         )
 5                                )         NO. H-11-CV-433
     v.                           )         June 2, 2011
 6                                )
     SAYBOLT, LP, ET AL,          )
 7                                )
              Defendants.         )
 8

 9

10                       PRETRIAL CONFERENCE
               BEFORE THE HONORABLE LYNN N. HUGHES
11

12

13

14

15

16   For the Plaintiffs:        Mr. Andrew R. Frisch*
                                Morgan & Morgan, PA
17                              6824 Griffin Road
                                Davie, FL  33314
18
     For the Defendants:        Ms. Ethel J. Johnson
19                              Ms. Elizabeth L. Bolt
                                Shook, Hardy & Bacon, LLP
20                              600 Travis, Suite 1600
                                Houston, TX  77002
21
     Court Reporter:            Bruce Slavin, RPR, CM
22

23
     *Appearing via teleconference.
24
     Proceedings reported by mechanical stenography and produced
25   by computer-aided transcription.
```

```
         1              THE COURT:  Mr. Frisch.
         2              MR. FRISCH:  Good morning, Your Honor.  How are
         3    you?
         4              THE COURT:  I'm fine.  We'll see if I am 15 minutes
10:34    5    from now.
         6              I have got Johnson and Bolt here.
         7              MR. FRISCH:  Good morning.
         8              MR. JOHNSON:  Good morning.
         9              MS. BOLT:  Good morning.
10:34   10              THE COURT:  Apparently, they thought they could
        11    improve on my notice and they put a bunch of bureaucratic
        12    garbage.  You can't see the edits, but I am going to share
        13    this with them, like putting "'Fluctuating Workweeks'" with
        14    initial capitals and quotation marks, a gratuitous comma
10:35   15    after "workweeks" before, quote, "Chinese overtime" and
        16    "have a claim" instead of "you may ask" and other things
        17    like that.  I have redone it.  You obviously haven't seen
        18    it.  It still needs some work so that the right things are
        19    emphasized, but the essence is the same, I think.
10:36   20              And I thought we were going to have a website.
        21              MR. FRISCH:  We're going to.  We haven't set it up
        22    yet.  We would just like that on there.  It's simply going
        23    to be "Saybolt Overtime Lawsuit" dot com, most likely.
        24              THE COURT:  No.  That's awful.  You're as bad as
10:36   25    they are.
```

|        |    |                                                                              |
|--------|----|------------------------------------------------------------------------------|
|        | 1  | MR. FRISCH:  So, I guess let's discuss it.  Well, |
|        | 2  | what do you -- I know you said you, quote, unquote, own it; |
|        | 3  | so, tell me what you're thinking. |
|        | 4  | THE COURT:  No.  Don't put that in quotes.  See, |
| 10:36  | 5  | you're just like them.  I am going to own it.  I know where |
|        | 6  | Florida is.  Don't make me come down there.  It should be |
|        | 7  | "Saybolt" hyphen "workers" dot com. |
|        | 8  | MR. FRISCH:  Okay. |
|        | 9  | THE COURT:  And if for some reason some union has |
| 10:36  | 10 | got it or something, stick a "2011" on the end of it or |
|        | 11 | something like that.  I want it neutral. |
|        | 12 | All right.  The limitations stopped March |
|        | 13 | 16th, 2011. |
|        | 14 | Mr. Frisch, the workers filed their suit in |
| 10:37  | 15 | North Carolina.  The fact that it needed to be transferred |
|        | 16 | is not the company's fault. |
|        | 17 | MR. FRISCH:  It didn't need to be transferred. |
|        | 18 | THE COURT:  Well, apparently, Judge Whatever in |
|        | 19 | North Carolina thought it did.  We even have things like |
| 10:37  | 20 | naming a class representative who is not even a part of the |
|        | 21 | lawsuit.  So, we're going to start it then. |
|        | 22 | And Saybolt cannot Twitter my case manager. |
|        | 23 | This is a document about the case.  It needs to have a |
|        | 24 | caption and be filed.  You can do that electronically, but |
| 10:38  | 25 | you can't write the case manager personally.  I don't care |

|       |    |                                                                        |
|-------|----|------------------------------------------------------------------------|
|       |  1 | how she is.  I care whether she gets her job done.  You                |
|       |  2 | shouldn't care how she is.  You should care whether she gets           |
|       |  3 | her job done.  So, cut the chat, file the document and                 |
|       |  4 | produce it in a way that's legible.                                    |
| 10:38 |  5 | MS. BOLT:  Yes, Judge.                                                 |
|       |  6 | THE COURT:  And I know what you're thinking.                           |
|       |  7 | Isn't she?                                                             |
|       |  8 | She's sitting there thinking, 'Well, he's old.                         |
|       |  9 | He won't be able to read anything.'  Well, I have young                |
| 10:39 | 10 | eyes --                                                                |
|       | 11 | MS. BOLT:  Yes, sir.                                                   |
|       | 12 | THE COURT:  -- and I pay them a lot of money, and                      |
|       | 13 | they actually stop at two-point type and, when it gets below           |
|       | 14 | that, even they can't read it.                                         |
| 10:39 | 15 | MS. BOLT:  Yes, Judge.                                                 |
|       | 16 | THE COURT:  So, I have no idea what this says, but,                    |
|       | 17 | if you think I should, it might need to be one of those                |
|       | 18 | things where you have got four sheets of paper with it                 |
|       | 19 | filling up the sheet of paper for each four -- the block so            |
| 10:39 | 20 | I can lay them across my desk and, that way, it's easy to              |
|       | 21 | actually file it because it will just be Page 1, 2, 3 and 4.           |
|       | 22 | Because that's bigger.                                                 |
|       | 23 | MS. BOLT:  Yes, sir.  This is larger.  And we may                      |
|       | 24 | have misunderstood, Judge.  We thought that you wanted                 |
| 10:39 | 25 | everything on one sheet of paper and we were trying to                 |

|       |    |                                                                                 |
|-------|----|---------------------------------------------------------------------------------|
|       | 1  | accommodate that and that's an error on our part.                               |
|       | 2  | THE COURT: Well, no. You can produce a 30-inch-                                 |
|       | 3  | by-24-inch sheet of paper if you want to. I was suggesting                      |
|       | 4  | that I am capable of lining up four 8-1/2-by-11 sheets with                     |
| 10:40 | 5  | help.                                                                           |
|       | 6  | MS. BOLT: Understood.                                                           |
|       | 7  | THE COURT: I mean, this is better, but that's a                                 |
|       | 8  | lot of numbers and not much --                                                  |
|       | 9  | She's just given me an 8-1/2-by-14-inch. Only                                   |
| 10:40 | 10 | somebody from Kansas would have that kind of paper on them.                     |
|       | 11 | And you know Glenda Hassan is from Kansas; so, don't be                         |
|       | 12 | messing with her. She knows where Kansas City is.                               |
|       | 13 | Have you, Mr. Frisch, been able to read these                                   |
|       | 14 | numbers and the analysis and what they did here?                                |
| 10:40 | 15 | MR. FRISCH: I have read the numbers and I think I                               |
|       | 16 | understand each of the columns, aside from the one that                         |
|       | 17 | purports to be Plaintiff's formula, which, as you probably                      |
|       | 18 | know, is not Plaintiff's formula. We at no point asserted                       |
|       | 19 | that that -- I'm not even sure how they calculated it, but                      |
| 10:41 | 20 | that's not the proper formula that we assert should be                          |
|       | 21 | applicable, although, again, we do think this is a merits                       |
|       | 22 | issue that probably does not properly bring to the stage to                     |
|       | 23 | the extent that Your Honor has asked us to look into it. We                     |
|       | 24 | have provided a stand-alone document that is Plaintiff's                        |
| 10:41 | 25 | calculations per the formula to counsel previously in the                       |

|       |    |                                                                           |
|-------|----|---------------------------------------------------------------------------|
|       | 1  | case and per the vast majority of the case law.                           |
|       | 2  | THE COURT: If you think the fourth column is                              |
|       | 3  | incorrect because it says "Guaranteed salary times 1 1/2                  |
|       | 4  | times overtime plus incentive and premium" -- That's not the              |
| 10:41 | 5  | formula you're using?                                                     |
|       | 6  | MR. FRISCH: Well, the issue is that they're not --                        |
|       | 7  | THE COURT: I just want an answer.                                         |
|       | 8  | MR. FRISCH: Yes. That's not the formula that I am                         |
|       | 9  | using. I am using the formula that I think I put -- I think               |
| 10:42 | 10 | it actually says which formula I used in general terms on                 |
|       | 11 | the Plaintiff's PDF calculation sheet.                                    |
|       | 12 | THE COURT: All right. But I want you to send a                            |
|       | 13 | formula like this one that it is in five terms, or four                   |
|       | 14 | terms when it has the "and". Why isn't that a "plus"? You                 |
| 10:42 | 15 | have the term "formula" and it's "plus incentive and                      |
|       | 16 | premium". So, it should be "plus", parenthesis, "incentive                |
|       | 17 | plus premium", close parens.                                              |
|       | 18 | History major?                                                            |
|       | 19 | MS. BOLT: Close. English.                                                 |
| 10:42 | 20 | THE COURT: That's even worse. Sit around in a                             |
|       | 21 | circle and talk about how everybody felt in Managua.                      |
|       | 22 | So, get a formula and Bolt will, using the                                |
|       | 23 | same data and the same format, produce a Column 5 to this.                |
|       | 24 | And, Miss Bolt, I would prefer that you say                               |
| 10:43 | 25 | "Pay Practice Alternative A, Alternative B, Alternative C".               |

```
          1              MS. BOLT:  Yes, sir.
          2              THE COURT:  And that doesn't commit anybody to any
          3   of them.  And then we'll figure out which is the right one,
          4   regardless of whether it's Frisch or Johnson's idea.  I
10:43     5   don't care whose idea.  I just want to figure out which one
          6   is the right one.
          7              And have we agreed that DeRoche and Pointer,
          8   Ponter --
          9              MS. JOHNSON:  Porter.
10:43    10              THE COURT:  -- Porter should be the class
         11   representatives, Mr. Frisch?
         12              MR. FRISCH:  We have no objection, Your Honor.  I
         13   think Ravia is equally as good a representative, but if Your
         14   Honor prefers -- As long as we choose people so it can move
10:44    15   forward, that's fine.
         16              MS. JOHNSON:  Judge, we objected to Ravia because,
         17   under our calculation, Ravia has not suffered any damages.
         18   And, therefore, to get that dispute out of the way, Willie
         19   Porter is the person who may have similar standing.
10:44    20              THE COURT:  All right.  Well, let's use DeRoche and
         21   Porter and, as you said, get on with this.
         22              And as long as we're here and got this mostly
         23   done -- These are all fairly sophisticated people.  We have
         24   e-mail addresses for all of them?
10:45    25              MS. JOHNSON:  I think we can, Judge.
```

```
         1              THE COURT:  By when will we have those?
         2              MS. JOHNSON:  I will find out probably this
         3     afternoon.
         4              THE COURT:  Are we talking about 200 people?
10:45    5              MS. JOHNSON:  Yes, Judge.
         6              THE COURT:  I believe it would be useful to go
         7     ahead and e-mail them, but go ahead and mail them to the
         8     last known address, please.  E-mail addresses are -- well,
         9     all addresses are variable and doubling up, I think, is the
10:45   10     better practice.
        11              Now, do you want to mail them or do you want
        12     Frisch to mail them?
        13              MS. JOHNSON:  We'll mail them.
        14              THE COURT:  All right.  What's the return address
10:45   15     going to be?
        16              MR. FRISCH:  It should be our office, Your Honor.
        17              MS. JOHNSON:  It should be the Frisch's office.
        18              MR. FRISCH:  We're happy to mail them if -- You
        19     know, traditionally, we have mailed them.
10:46   20              THE COURT:  I don't care, but I want the return
        21     address to be a simplified, just, you know, real, accurate
        22     mailing address but with the address being "Saybolt Workers
        23     2011" or whatever you end up as the website.  If you put my
        24     name on it nobody will open it.  If you put Frisch's nobody
10:46   25     will open it.  If you put Johnson's name on it they'll burn
```

```
         1   it before and not open it.
         2           MR. FRISCH:  I propose that we send it out -- if
         3   there is no issue, we would like to include a
         4   self-addressed, stamped envelope back to us.
10:46    5           THE COURT:  I think that would be useful.
         6           MS. JOHNSON:  For counsel for Dacar to send them as
         7   well as be the recipient of them?
         8           THE COURT:  Yes.
         9           MS. JOHNSON:  No problem.  That's fine.
10:47   10           THE COURT:  The return-address envelope -- and on
        11   that envelope, as opposed to the envelope to go out, it can
        12   say "Saybolt Workers in Care of..." and then put you.  Got
        13   it?
        14           MR. FRISCH:  Got it.
10:47   15           THE COURT:  And do it tastefully.  After all, this
        16   is all being done indirectly under my name, so -- And help
        17   the poor old postmen.  Put the address in 12- or 13-point
        18   type and have it so it has the dignity.
        19              How come you didn't want me to put this
10:47   20   approval on the notice?
        21           MS. JOHNSON:  Judge, I think that it could be
        22   suggestive that the Court has somehow approved that --
        23           THE COURT:  The notice?  They might get that idea,
        24   yeah.
10:47   25           MS. JOHNSON:  Yeah, it says the notice, but I am
```

|       |    |                                                                              |
|-------|----|------------------------------------------------------------------------------|
|       | 1  | thinking folks may take that a step further, to think that                   |
|       | 2  | the Court has approved that they deserve money.                              |
|       | 3  | THE COURT: Then, I will equally disabuse them of                             |
|       | 4  | that notion if they're wrong. But I don't want these hard-                   |
| 10:48 | 5  | working, fine, upstanding middle-American oil scientists to                  |
|       | 6  | think that some slick in Florida is sending them a                           |
|       | 7  | solicitation.                                                                |
|       | 8  | MS. JOHNSON: Well, Judge, I have a question about                            |
|       | 9  | the notice. In the envelope -- I understand what the Court                   |
| 10:48 | 10 | wants to go on the envelope itself. I am assuming there is                   |
|       | 11 | no cover letter of any --                                                    |
|       | 12 | THE COURT: Nothing in the envelope except the                                |
|       | 13 | notice and the return envelope.                                              |
|       | 14 | MR. FRISCH: Your Honor, could we also have just a                            |
| 10:48 | 15 | blank request for their personal information so we can set                   |
|       | 16 | them up, their contact information -- their names, address,                  |
|       | 17 | phone numbers, e-mail, date of birth?                                        |
|       | 18 | THE COURT: Isn't that on the consent?                                        |
|       | 19 | MR. FRISCH: No.                                                              |
| 10:49 | 20 | THE COURT: Why not?                                                          |
|       | 21 | MR. FRISCH: We can put it on the consent, but I am                           |
|       | 22 | happy to show Miss Johnson what I'm talking about. Really,                   |
|       | 23 | it's just to get the basics of each person.                                  |
|       | 24 | MS. JOHNSON: Judge, we'd prefer that that not be                             |
| 10:49 | 25 | there.                                                                       |

|  |  |  |
|---|---|---|
|  | 1 | THE COURT:  Well, what's the consent say? |
|  | 2 | MR. FRISCH:  The consent says their -- it has their |
|  | 3 | name on it that they fill in when they sign and date it, and |
|  | 4 | it says that they're consenting to join the lawsuit and all |
| 10:49 | 5 | the important things that come with that. |
|  | 6 | THE COURT:  Well, I don't know about that.  Just |
|  | 7 | send that with the case number to Glenda so I can look at |
|  | 8 | it.  But the obvious thing to do is to put their street |
|  | 9 | address, telephone and fax and date of birth or something on |
| 10:49 | 10 | the -- I don't want extraneous stuff. |
|  | 11 | And, Mr. Frisch, it's conventional west of the |
|  | 12 | Mississippi to say "Yes, sir" and "No, sir" to judges, not |
|  | 13 | "Yeah". |
|  | 14 | MR. FRISCH:  I apologize, Your Honor. |
| 10:50 | 15 | THE COURT:  All right.  If you will get the |
|  | 16 | information sheet and the consent form and, please, in an |
|  | 17 | admirable form, get it to Glenda today. |
|  | 18 | Assuming I get you back revised drafts of all |
|  | 19 | that sometime tomorrow, you can get them all the addresses |
| 10:50 | 20 | you have in some electronic form by Tuesday afternoon? |
|  | 21 | MS. JOHNSON:  I believe so.  I'll have to get it |
|  | 22 | from my company, but I will certainly see if they -- |
|  | 23 | THE COURT:  Right.  Not that Bolt has anything to |
|  | 24 | do this week. |
| 10:50 | 25 | Right? |

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | MS. BOLT: That's right.                                          |
|       | 2  | THE COURT: And if you get the addresses Tuesday                  |
|       | 3  | when can you mail the notices, Mr. Frisch?                       |
|       | 4  | MR. FRISCH: I would think, Your Honor, no later                  |
| 10:51 | 5  | than Thursday. It's really just a matter of putting the          |
|       | 6  | address and creating address labels and putting it on the        |
|       | 7  | envelopes. But probably, let's say, it should not be any         |
|       | 8  | later than Thursday, Your Honor.                                 |
|       | 9  | THE COURT: All right. In the expectation that                    |
| 10:51 | 10 | they will absolutely be in the mail Friday -- And Friday is      |
|       | 11 | fine. I mean, I want them to go out, but it's more               |
|       | 12 | important they be done right than they be done immediately.      |
|       | 13 | So, Friday is the 10th. So, the response day                     |
|       | 14 | in the notice will be July 8th. It has to be mailed by July      |
| 10:52 | 15 | 8th. And I think we accept things that are postmarked            |
|       | 16 | through the 12th.                                                |
|       | 17 | MS. JOHNSON: Through the 12th?                                   |
|       | 18 | THE COURT: Yeah. Don't tell anybody that, but you                |
|       | 19 | know there has to be a deadline, but finding an open post        |
| 10:52 | 20 | office and things like that can be a time-consuming task.        |
|       | 21 | MR. FRISCH: Your Honor, can I speak to that --                   |
|       | 22 | THE COURT: Yes, sir.                                             |
|       | 23 | MR. FRISCH: -- for a second?                                     |
|       | 24 | THE COURT: Sure.                                                 |
| 10:52 | 25 | MR. FRISCH: It seems to me that that's an                        |

|       |    |                                                                         |
|-------|----|-------------------------------------------------------------------------|
|       | 1  | inordinately short amount of time, especially given the                 |
|       | 2  | nature of the work that these men and ladies perform and                |
|       | 3  | what it wants them to do, aside from the fact that people,              |
|       | 4  | as you pointed out, frequently move.  Even if they move --              |
| 10:52 | 5  |     THE COURT:  If you --                           |
|       | 6  |     MR. FRISCH:  -- across the street they may not --|
|       | 7  | and they no longer work there and they no longer have an                |
|       | 8  | e-mail address, they may not even receive the notice within             |
|       | 9  | the period of time; it's so short.  But even if they're                 |
| 10:53 | 10 | currently working there and we have their correct address,              |
|       | 11 | due to the nature of the work that the inspectors perform --            |
|       | 12 | a lot of them, if they're offshore, may be away for a week              |
|       | 13 | or two or more.  Even if we have their correct addresses --             |
|       | 14 |     THE COURT:  They're not going to be off for a   |
| 10:53 | 15 | month.                                                                  |
|       | 16 |     MR. FRISCH:  I'm sorry?                         |
|       | 17 |     THE COURT:  They're not going to be off for a   |
|       | 18 | month.                                                                  |
|       | 19 |     MR. FRISCH:  Well, it's possible.               |
| 10:53 | 20 |     THE COURT:  It violates the Fair Labor Standards|
|       | 21 | Act to keep them out there a month.                                     |
|       | 22 |     MR. FRISCH:  I'm sorry?                         |
|       | 23 |     THE COURT:  It violates the labor laws to keep them |
|       | 24 | out there for a month.                                                  |
| 10:53 | 25 |     MR. FRISCH:  Well, they just may not be at their |

1   homes.  You're right, Your Honor.

2            THE COURT:  They may tell their wives they have

3   been offshore for a month.

4            MR. FRISCH:  But, in my experience -- We have

10:53  5   handled cases against competitors in the last few years.

6   From my experience and for whatever reason, it has taken

7   people longer than 30 or 45 days to return their notices.

8            THE COURT:  Well, I'll round it up to 45 days.  But

9   these are educated, competent, paperwork-familiar -- We're

10:54  10  not doing busboys.  And, of course, if the post office

11  returns the things, then those people are exempt from the

12  deadline anyway; they never got notice.

13           MR. FRISCH:  Just one further point, Your Honor.

14           THE COURT:  Yes, sir.

10:54  15  MR. FRISCH:  The issue that goes along with this is

16  what very frequently happens -- and Your Honor is probably

17  familiar with this issue -- is that, if we make it such a

18  short deadline, inevitably what happens is in 50 days, 55

19  days, 60 days they receive their notices, and then if

10:54  20  Saybolt does not agree, which would then be their right, or

21  consent to allow those people to still join the case, we get

22  stuck with the issue of filing subsequent lawsuits for

23  people that could have joined the case, you know, but for

24  the difference of five or ten days.  And I know that's an

10:55  25  issue that can't ever be alleviated because it's helpful to

|   |   |   |
|---|---|---|
|  | 1 | have to have a firm deadline.  I recognize that.  To have a |
|  | 2 | lengthier deadline it helps with that issue at least a |
|  | 3 | little bit. |
|  | 4 | THE COURT:  On the other hand, the long deadline of |
| 10:55 | 5 | people who intend to do it and put it out of their mind, |
|  | 6 | that they're going to do did it next month and then they |
|  | 7 | don't comply....  So, you're actually creating a booby trap |
|  | 8 | for people who would do it on time.  I think 45 days is |
|  | 9 | enough. |
| 10:55 | 10 | One of my favorite responses to a class action |
|  | 11 | notice was "Dear, Judge.  I'm not qualified, but if you're |
|  | 12 | handing out money I'd like some."  Now, who takes the time |
|  | 13 | to fill that out and mail it? |
|  | 14 | All right.  So, it's going to go on the 10th. |
| 10:56 | 15 | All right.  So, July 20 -- |
|  | 16 | Do you get your mail at a street address or a |
|  | 17 | post office box?  Oh.  It's right here.  Do you get good |
|  | 18 | mail delivery, Mr. Frisch? |
|  | 19 | MR. FRISCH:  Yes, I do, Your Honor, as far as I |
| 10:56 | 20 | know. |
|  | 21 | THE COURT:  Like my personal mail, for security, |
|  | 22 | comes to a post office box in a dinky, little post office in |
|  | 23 | this building.  On many Mondays, a heavy day because we |
|  | 24 | don't get service on Saturday, they just don't bother to put |
| 10:57 | 25 | it up because it's a lot of trouble to sort that and get it |

|       |    |                                                                |
|-------|----|----------------------------------------------------------------|
|       | 1  | up.  So, they just tell you there was no mail.                 |
|       | 2  | So, I am going to round it to the 26th just in                 |
|       | 3  | case some of our people....                                    |
|       | 4  | So, they've got to mail it by then.  There                     |
| 10:57 | 5  | will be a period of grace, but nobody can know about it.  In   |
|       | 6  | fact, I'm not going to tell you all about it.  I'll make it    |
|       | 7  | up later.                                                      |
|       | 8  | So, that blank is 7-26-11.  I think that's....                 |
|       | 9  | All right.  Anything else we can do this                       |
| 10:57 | 10 | morning?                                                       |
|       | 11 | MS. BOLT:  Judge, I'd like to just get a little                |
|       | 12 | clarification on the -- I want to make sure that we submit a   |
|       | 13 | sheet that's easy for you to read.  It's permissible with      |
|       | 14 | you if we do individual sheets and then you can print those    |
| 10:58 | 15 | and tape them together, on the calculations?                   |
|       | 16 | THE COURT:  I'll just lay them on my desk in the               |
|       | 17 | order they go, and if I don't like one I can move it against   |
|       | 18 | the others.                                                    |
|       | 19 | MS. BOLT:  Perfect.                                            |
| 10:58 | 20 | THE COURT:  Mr. Frisch will get you the formula so             |
|       | 21 | that there can be a parallel column to his calculations and    |
|       | 22 | that will be "C" for Florida.                                  |
|       | 23 | MS. BOLT:  Understood.                                         |
|       | 24 | THE COURT:  You get vitamin C from oranges.                    |
| 10:58 | 25 | Oranges come from Florida.  It's perfect.                      |

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | MS. JOHNSON:  Judge, one point of clarification.                     |
|       | 2  | (Off-the-record discussion)                                          |
|       | 3  | THE COURT:  Anything else?                                           |
|       | 4  | MS. JOHNSON:  Judge, I had a question about the                      |
| 10:59 | 5  | website that the Court is going to own.  In what way are the         |
|       | 6  | potential plaintiffs going to be advised of the website?             |
|       | 7  | Does it go on the notice or does it go somewhere else?               |
|       | 8  | THE COURT:  Yes.  Mr. Frisch will add to this                        |
|       | 9  | notice, widely spaced below your name and address, "C"               |
| 11:00 | 10 | colon -- or, actually, "C" and then center that in a column          |
|       | 11 | and underneath centered put just the website.  If they don't         |
|       | 12 | know what to do with the website I don't want them.                  |
|       | 13 | All right.  Anything else?                                           |
|       | 14 | MR. FRISCH:  Your Honor, just one point of                           |
| 11:00 | 15 | clarification.  I guess these are questions that are posed           |
|       | 16 | to counsel.                                                          |
|       | 17 | THE COURT:  Ask me and I will ask her.                               |
|       | 18 | MR. FRISCH:  Okay.  My understanding -- I know                       |
|       | 19 | that -- I have previously provided this formula.  So, do I           |
| 11:00 | 20 | need to provide the formula again?                                   |
|       | 21 | THE COURT:  I want you to tell Bolt exactly what                     |
|       | 22 | you want as the formula for that column, looking at her              |
|       | 23 | inarticulate representations of the other formula.  I just           |
|       | 24 | want, today, you to make sure.  So, send her a clean,                |
| 11:01 | 25 | arithmetically coherent formula to go under "Alternative C."         |

|  |  |  |
|---|---|---|
|  | 1 | MS. JOHNSON: Did you want this back, Judge? |
|  | 2 | THE COURT: No. I want you to frame it. |
|  | 3 | MS. JOHNSON: You want me to clean it up? |
|  | 4 | THE COURT: I have already cleaned it up. I can't |
| 11:01 | 5 | trust you. Anybody who would add that to my beautiful form |
|  | 6 | can't be trusted to do edits. I want you to frame it and |
|  | 7 | admire your work. |
|  | 8 | All right. Thank you, counsel. |
|  | 9 | MR. FRISCH: Your Honor, one last thing. I |
| 11:01 | 10 | apologize. I didn't realize -- Are we going to get an |
|  | 11 | e-mailed copy of the notice that Your Honor has finalized, |
|  | 12 | with the exception of the website? |
|  | 13 | THE COURT: You will get a text copy from Glenda. |
|  | 14 | So, she'll just send you the file with it so that it doesn't |
| 11:02 | 15 | get garbled. I will print one before I send it and file it |
|  | 16 | so it will be in the record. And we'll send Saybolt the |
|  | 17 | same text copy you get, but, that way, you will be able to |
|  | 18 | edit it and it won't be in a PDF that then somebody has to |
|  | 19 | retype and they add a bunch of stuff like people do. |
| 11:02 | 20 | MR. FRISCH: Understood. |
|  | 21 | THE COURT: When will you know what the website is? |
|  | 22 | MR. FRISCH: Probably this afternoon. As I said, |
|  | 23 | it's after prior conferences. Our intention is to -- the |
|  | 24 | main page of the website will just be the notice. So, once |
| 11:03 | 25 | we have the notice, you know, finalized and formatted we'll |

```
        1   then purchase the domain, I guess, and after reviewing --
        2   Well, actually, I could check right now, but I think --
        3            THE COURT:  Well, I can't wait for that.  But I'm
        4   going to wait until I know what the domain name is.  I am
11:03   5   going to put it on here and send an image with everything
        6   exactly where I want it the way I want it.  So, if you will
        7   e-mail that to Johnson and Hassan so that I can incorporate
        8   it, and then you will get an imaged copy of it and not a
        9   text copy.  And, as soon as you can, get me the consent and
11:03  10   your information blank and I will see what I can do with
       11   that as quickly as I can.
       12            MR. FRISCH:  I will try to do that all in one
       13   e-mail which will have co-counsel on it as well, Your Honor.
       14            THE COURT: Okay.  All right.  Thank you.
       15
       16                    COURT REPORTER'S CERTIFICATE
       17            I, BRUCE SLAVIN, certify that the foregoing is a
       18   correct transcript from the record of proceedings in the
       19   above-entitled matter, to the best of my ability.
       20
       21                                    s/Bruce Slavin
                                            BRUCE SLAVIN, RPR, CM
       22
       23
       24
       25
```