UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LYLE DEROCHE and FELTON RAVIA,
individually and on behalf of all other
persons similarly situated,

     Plaintiffs,

v.                                                    CASE NO.: 4:11-CV-00433

SAYBOLT, LP,

     Defendant.

_____/

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Dated: January 14, 2013

Submitted by:

Andrew R. Frisch
MORGAN & MORGAN, P.A.
600 N. Pine Island Road, Suite 400
Davie, FL 33324
Tel: 954-318-0268
Fax: 954-333-3515

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................... iii

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW IN SUPPORT..........................................................1

SUMMARY OF THE ARGUMENT..............................................................1

Issues in the Case.............................................................................. 1

The DOL and Courts Hold That Payment Plans, Like Defendant's, Do Not Provide Fixed
Compensation Sufficient to Apply to the FWW......................................................2

Defendant's FWW Pay Practice Was Invalid Because the Parties Did Not Have the Required
"Clear      Mutual      Understanding"      to      Render      This      Practice
Legal.........................................................................3

Plaintiffs' Overtime Damages Are to Be Calculated at Time and One Half...........................4

Defendant's FLSA Violations Were Willfull..........................................................4

FACTS.........................................................................5

Defendant, SAYBOLT, LP..........................................................5

Plaintiffs' ............................................................................5

Plaintiffs Were Required to Work Overtime ...........................................................6

Plaintiffs' Overtime Pay ..........................................................................6

Plaintiffs Did Not Receive a Fixed Amount of Non-Overtime Compensation Each Week – It
Varied Depending On Their Hours Worked and Work They Performed ...........................6

Plaintiffs Received Incentive Pay In Addition to Their Base Pay .....................................7

Plaintiff's Base Pay Was Subject to Deductions .......................................................8

Defendant's FLSA Violations Were Knowing and Willfull..........................................10

MEMORANDUM OF LAW ..........................................................................14

Standard On Motion For Summary Judgment .......................................................14

The FLSA Must Be Construed Liberally In Favor of Plaintiffs ......................................15

The FWW Method of Calculating Overtime ...................................................16

    The FWW Method Creates Incentives to Short Employee's Pay - - This is Contrary to Congress' Intent in Enacting the FLSA ...................................................16

    The Fluctuating Workweek Has Prerequisites to Its Use .....................................17

Saybolt Violated the Prerequisites to Using the FWW .............................................18

    Saybolt Failed to Pay Inspectors a "Fixed Weekly Salary" for Whatever Hours They Were Called Upon to Work in a Workweek ...................................................19

    Saybolt and Plaintiffs Did Not Have a Clear Mutual Understanding that Plaintiffs Would Receive Their Base Salary When They Did Not Work a Full Schedule.  This is Further Evidence that the FWW Cannot Apply ...................................................23

Unpaid Overtime Pay Must Be Calcualted Based on a 40-Hour Work Week and at Time and One Half ...................................................25

Saybolt Is Liable for Mandatory Liquidated Damages .............................................28

Saybolt's Choice to Disregard the Legal Advice That It Was Violating the FLSA Renders The Violations Willfull ...................................................30

**CONCLUSION** ...................................................33

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LYLE DEROCHE and FELTON RAVIA,
individually and on behalf of all other
persons similarly situated,

      Plaintiffs,

v.                             CASE NO.: 4:11-CV-00433

SAYBOLT, LP,

      Defendant.

_____/

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
## AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Pursuant to the Federal and Local Rules of Civil Procedure, Plaintiffs, LYLE DEROCHE and FELTON RAVIA, *et. al.* ("Plaintiffs"), files this Motion for Summary Judgment and Memorandum of Law in Support and state as follows:

### SUMMARY OF THE ARGUMENT

**A.**    **Issues in the Case.**

Defendant, Saybolt, LP ("Defendant" or "Saybolt"), maintains that it did not violate the FLSA, because it purportedly paid Plaintiffs on a proper Fluctuating Workweek ("FWW") method. The undisputed facts of this case and precedent to the contrary defeat Defendant's contentions.

In short, court decisions and the Department of Labor's ("DOL") regulations are clear that the FWW has several prerequisites to its use, and failure to meet ***any one*** of these requisites renders attempted use of the method illegal. Here, Defendant failed to meet not just one prerequisite, but several. Of similar significance, is the fact that courts around the country

1

already have determined that virtually identical overtime practices used by Saybolt's competitors violate the Fair Labor Standards Act ("FLSA").

**B.** **The DOL and Courts Hold That Payment Plans, Like Defendant's, Do Not Provide Fixed Compensation Sufficient to Apply the FWW.**

Plaintiffs are a class of oil, gas and petroleum inspectors ("Plaintiffs" or "Inspectors") employed by Defendant. If they worked at least forty (40) hours in a workweek,[1] Defendant paid Plaintiffs one-fifty second (1/52) of their purported annual salary, along with an attending weekly variable/combination of "day-off pay" (if they worked on a scheduled day-off), "offshore pay" (if they worked at a location "offshore" or at sea), and "holiday pay" (if they work on a scheduled holiday). *It is undisputed that Plaintiffs' straight time, or non-overtime pay, was not "fixed."*

Instead, Defendant varied Plaintiffs' straight time compensation week-to-week, depending on whether they: (1) received 1/52 of their annual salary (alone) as compensation for straight time worked; (2) received 1/52 of their salary, combined with day-off pay, offshore pay and/or holiday pay, depending on the type of work performed and hours worked; or (3) had pay docked such that they received less than 1/52 of their annual salary. Accordingly, because Plaintiffs' straight time compensation varied from week-to-week, Defendant cannot demonstrate that the amount it paid to Plaintiffs for straight time each week was "fixed" – as required to apply the FWW under the FLSA as a matter of law.

Notwithstanding this violation, Defendant failed to pay Plaintiffs time and one half overtime for all hours worked over forty (40) in a workweek ("overtime hours"), and therefore further violated the FLSA. *See* 29 C.F.R. 778.114(a). *See Brumley v. Camin Cargo Control, Inc.*, 2010 WL 1644066 (D.N.J. April 22, 2010) (granting summary judgment to identical class of

---

[1] As discussed further below, under certain circumstances Defendant paid its Inspectors less than their "salary" or docked their pay. This alone renders the Fluctuating Workweek methodology inapplicable.

OGC Inspectors paid on an illegal FWW basis, because the plaintiffs received sea pay and day-off pay, and had their pay docked, and thus, their salaries were not "fixed"); *Adeva v. Intertek USA, Inc.*, 2010 WL 97991 (D.N.J. Jan. 11, 2010) (granting summary judgment to plaintiff OGC Inspectors on the defendant's FWW and holding that because the plaintiffs received sea pay, day-off pay and/or holiday pay, their salaries were not "fixed," and they were entitled to full and proper overtime compensation); *Ayers v. SGS Control Services, Inc.*, 2007 WL 646326, *8-9 (S.D.N.Y. 2007) (granting summary judgment to plaintiff OGC Inspectors on the defendant's FWW and holding that because the plaintiffs received sea pay and day-off pay, their salaries were not "fixed," and they were entitled to full and proper overtime compensation).[2]

### C. Defendant's FWW Pay Practice Was Invalid Because the Parties Did Not Have the Required "Clear Mutual Understanding" to Render This Practice Legal.

Similarly, and because of the foregoing facts, Plaintiffs and Defendant necessarily lacked a "clear mutual understanding" that Defendant would pay such a fixed salary each week regardless of hours worked. This fact alone further renders the FWW inapplicable to Plaintiffs. *See Brantley v. Inspectorate America Corp.*, 821 F.Supp.2d 879, 892 (S.D. Tex. 2011)("In light of the salary deductions imposed by Defendant's sick and vacation leave policy, there is no "clear mutual understanding" that Plaintiffs were being paid a fixed salary."); *Dooley v. Liberty Mutual Insurance Company*, 369 F.Supp.2d 81 (D. Mass. 2005)("[e]ven though those employees may have in fact received a fixed salary, they did not have a 'clear mutual understanding' that the employer *will pay* that fixed salary regardless of hours worked," because [the defendant] *would not have* paid a 'fixed salary' that would satisfy the second requirement" of the FWW

---

[2] On April 5, 2011, the Department of Labor issued a final rule regarding 29 C.F.R. § 778.114, clarifying that Defendant's pay methodology fails to comport with the rules for using fluctuating workweek. *See* Updating Regulations Issued Under the Fair Labor Standards Act, 76 Fed. Reg. 18832, 18848-18850 (April 5, 2011) ("[W]hile to Department continues to believe that the payment of bonus and premium payments can be beneficial for employees in many other contexts, we have concluded that unless such payments are overtime premiums, they are incompatible with the fluctuating workweek method of computing overtime under section 778.114.").

test)(*quoting O'Brien v. Town of Agawam*, 350 F.3d 279, 288 (1st Cir. 2003)(emphasis added).

### D. Plaintiffs' Overtime Damages Are to Be Calculated at Time and One Half

Further, in light of the fact that the Defendant cannot satisfy the requirements for the FWW exception to the FLSA's default time and a half methodology for calculating Plaintiffs' overtime pay, Plaintiffs' are entitled to damages calculated at time and a half. As many courts have previously held, an employer who fails to satisfy the mandatory prerequisites for use of the fluctuating workweek forfeits its benefits for the purpose of calculating back pay damages. *See Brumley*, 2010 WL 1644066, at *7; *Ayers*, 2007 WL 3171342, at *2.

### E. Defendant's FLSA Violations Were Willful

Defendant continued to violate the FLSA with the explicit knowledge it was doing so. That is, despite the fact that two (2) different labor and employment attorneys advised Defendant that DOL regulations and case law interpreting same have uniformly determined that Defendant's specific pay regarding the FWW violate the FLSA, Defendant failed to change its fluctuating workweek methodology to come into compliance with the FLSA for almost three (3) years, **and only after it was sued**. Rather, Defendant elected to willfully disregard the legal advice it received and chose to continue to violate the FLSA, knowingly and without remorse. Ignorance of the law is one thing, purposeful disregard is another thing - - willfulness. As such, Defendant cannot demonstrate the requisite "good faith" to avoid an imposition of liquidated damages, and the statute of limitations applicable to Plaintiffs' should be three years.

Thus, as more fully discussed below, Plaintiffs are entitled to summary judgment regarding their claims for overtime compensation, the manner in which their unpaid overtime should be calculated, and liquidated damages. Similarly, given Defendant's continued knowing

and willful violations of the FLSA, a three year statute of limitations should be applicable to their claims.

## FACTS

### Defendant, SAYBOLT, LP

Defendant, Saybolt, LP's ("Saybolt" or "Defendant"), is an independent petroleum and analytical and calibration company.   Saybolt takes measurements, samples, determines quantities and qualities of bulk commodities independently.  *See id.*  Saybolt's clients and partners include major oil and chemical companies, traders, shippers and buyers and insurance interests.  *See* Plaintiff's Statement of Undisputed Facts in Support of Motion for Summary Judgment ("PSOF"), ¶ 1.[3]

Saybolt has offices and laboratories strategically located throughout the world, specifically for the purpose of performing inspection services on cargo that travels all over the world. *See id.*, ¶ 2.

Saybolt's gross revenues for all years relevant to the instant case were well in excess of $500,000.00.   Specifically, in 2007 and 2008, Saybolt's revenues in North America alone were approximately $45,000,000.00.  In 2009, 2010, 2011 and 2012, Saybolt's revenues in North America were approximately $50,000,000.00. *See id.*, ¶ 3.

### Plaintiffs

To effectuate its purpose, Saybolt employed, and continues to employ, hundreds of inspectors ("Plaintiffs" or "Inspectors"), to perform the inspection work in the field, on high value oil, petroleum and chemical commodity cargo, and collect the necessary data.  *See id.*, ¶ 4.

Plaintiffs worked for Saybolt at various times between 1993 and the present.  As

---

[3] Since 1997, Saybolt has been wholly owned and operated by Core Labs Company. *See id.*

inspectors, Plaintiffs' job was to perform field inspections and sampling of crude and refined petroleum products, based on well-defined regulations.  Inspector work duties included routine inspection work in petroleum and petrochemical terminals and refineries, as well as inspection work on board barges and ships.  *See id.*, ¶¶ 5-6.

### Plaintiffs Were Required to Work Overtime.

During their employment, Plaintiffs regularly worked, and continue to work, in excess of forty (40) hours per workweek, often working as many as 90 hours per workweek depending on the work load involved.  Saybolt expected/expects Inspectors to work a minimum of forty hours per week.  Plaintiffs were often required to work on their scheduled days off and on days that were scheduled as holidays.  There are many examples of Plaintiffs working on their scheduled days off.  *See id.*, ¶¶ 7-9.

### Plaintiffs' Overtime Pay.

At all times relevant to this lawsuit, prior to February 2012, Defendant paid Plaintiffs pursuant to a pay scheme known in the industry as "Chinese Overtime."  Under this overtime pay scheme (which Saybolt referred to as the Fluctuating Work Week Method ("FWW")), Saybolt calculated inspectors' overtime rate by dividing their weekly base pay, plus any applicable bonuses or premiums, by all of the hours they worked in the week, and dividing that rate in half.  Saybolt then paid inspectors a half-time, not time and one-half rate for hours worked in excess of 40 in the week.  *See id.*, ¶¶ 10-11.

The result of the FWW payment scheme was that the more the Plaintiffs worked, the less they were paid per hour.  *See id.*, ¶ 12.

### Plaintiffs Did Not Receive a Fixed Amount of Non-Overtime Compensation Each Week- It Varied Depending on Their Hours Worked and Work They Performed.

Saybolt's Employee Handbook makes no reference to the FWW or any overtime scheme, other than the FLSA's default time and a half methodology.  Rather, the sole document that references the FWW methodology regarding inspectors' pay is contained within the Fluctuating Workweek Half-Time Acknowledgement Form.  Thus, to the extent an inspector did not receive the FWW Acknowledgement there is no other document that would put the inspector on notice of the fact that Saybolt purported to pay him or her utilizing the FWW.  *See id.*, ¶ 13.

At the inception of Plaintiffs' employment, Defendant required some Plaintiffs to sign a document memorializing their purported understanding that Defendant will pay the Inspector under Defendant's "Chinese Overtime" methodology described above.  However, many Plaintiffs were never presented with the FWW Acknowledgement form.  *See id.*, ¶ 14.

While, on its face, the FWW Acknowledgement appears to provide for a fixed amount of straight time pay each week, Defendant acknowledges that in actuality Plaintiffs' straight time pay (pay for the first forty hours) ***did not remain fixed***, but instead, varied each week.  That is, it varied because of the different combinations/types of pay each Plaintiffs received per week, and depending on the schedule and number of hours he/she worked.  *See id.*, ¶ 15.

### Plaintiffs Received Incentive Pay in Addition to Their Base Pay.

Saybolt paid Plaintiffs various shift differentials, in addition to their "salary," including day-off pay (for working on a scheduled day-off), holiday pay (for working on a company-recognized holiday), and off-shore pay (for work performed off-shore).  The additional payments were lump sum payments that were given to Plaintiffs when they performed extra work under one or more of the above conditions.  *See id.*, ¶¶ 16-17.

The incentive payments did not vary depending on whether the hours were overtime or regular hours.  For example, an inspector that worked on a scheduled day-off was paid $55.00

for such work ("day-off pay" or "DOP"), in addition to his other straight time pay that week. *See id.*, ¶ 18.

As a result of incentive pay in differing amounts, depending on the nature and amount of work performed by Plaintiffs each week, each Plaintiff's straight-time (non-overtime) pay necessarily varied week-to-week—it was not a fixed amount. *See id.*, ¶ 19.

Plaintiff, Dan Albright, received the following amounts as straight time (non-overtime) pay between May 4, 2007, and June 29, 2007,  including his base ("regular") pay, holiday pay, day-off pay and other non-discretionary bonuses: $530.92 for week one of pay period ending May 4, 2007; and  $1,015.92 for week two of pay period ending May 4, 2007; $1307.29 for week one of pay period ending May 18, 2007; and $597.29 for week two of pay period ending May 18, 2007; $588.99 for week one of pay period ending June 1, 2007; and $1,233.99 for week two of pay period ending June 1, 2007.

Defendant also maintained several pay policies, throughout the time when it purported to use the FWW, which resulted in impermissibly docking of Inspectors' pay. *See id.*, ¶ 21. For example, pursuant to Saybolt policy, Plaintiffs' salaries were subject to reduction if they took personal time off, but had not accrued sufficient sick or vacation time to cover the absence. *See id.*, ¶ 22.

Saybolt's written policy was such, that if a Plaintiff was unavailable for work one or more days within a workweek, and did not have vacation or sick time accrued (and vested), Saybolt would reduce his salary. *See id.*, ¶ 23.

Saybolt's payroll records produced in this lawsuit show at least three hundred and sixty one such instances, where it reduced a Plaintiff-inspector's "base pay," on a week by week basis, when he or she worked fewer than 40 hours in a work week.[4]  *See id.*, ¶ 24.

Similarly, pursuant to written policy, that Saybolt acknowledges was applicable to all Plaintiffs, during Plaintiffs' first six (6) months of employment, Saybolt reduced Inspectors' weekly pay for any absences, even if they had accrued vacation time to cover an absence, because their vacation time had not yet vested.  Such reductions were made, regardless of the reason for the Inspector's unavailability.  *See id.*, ¶¶ 25-26.

In addition to the foregoing reductions, Saybolt maintained a furlough program.  Pursuant to the furlough program, which Saybolt used as a cost-saving measure when there was reduced work at certain branches, Saybolt would tell Inspectors they were not required to report to work on certain days.  However, when the Inspectors did not report to work, they were not paid for the days that they had not worked.  *See id.*, ¶ 27.

Under the furlough program, which Saybolt acknowledges was a written policy applicable to all Inspectors, Inspectors were subject to being furloughed for partial workweeks (i.e. working some days within a workweek and being furloughed on other days within the same workweek).  When an Inspector was furloughed for a partial workweek, they were paid only for the days in the workweek on which they actually worked.  Thus, the furlough policy too resulted in impermissible deductions to Inspectors' pay.  *See id.*, ¶ 28.

---

[4] Defendant also paid Plaintiffs an hourly rate (rather than their salary) in weeks in which they took accrued vacation or sick time, if their hours worked were greater than the multiple derived by multiplying the number of days worked times eight (8) hours.  Thus, in weeks in which an Inspector worked more than eight (8) hours per day, and took one (1) or more vacation or sick day, his straight-time pay varied as well.  *See id.*

Since, the schedules of Inspectors varied week-to-week, whereby sometimes an Inspector earned a combination of off-shore, day-off and/or holiday pay, and sometimes not, each week the amount of Inspectors' straight time pay was variable, and it was not a fixed amount. Similarly, because the straight-time pay was subject to docking, under Defendant's policies and procedures uniformly applicable to all Inspectors, such straight time pay was not "fixed." *See id.*, ¶¶ 29.

Moreover, because their straight time pay was subject to deductions, as described above, Plaintiffs could not and did not understand that their base pay was a fixed amount. *See id.*, ¶ 30.

### Defendant's FLSA Violations Were Knowing and Willful.

It is uncontested that Defendant's FLSA violations, at issue here, were knowing and willful, and were not reasonable or committed in "good faith." *See id.*, ¶ 31.

Significantly, the FWW's definition of "fixed salary" has remained **unchanged** for over 60 years, despite countless opinions on the subject. *See Overnight Transp. v. Missel,* 316 U.S. 562 (1942); *Spires v. Ben Hill County*, 745 F.Supp. 690 (M.D. Ga. 1990); *Flood v. New Hanover County*,125 F.3d 249 (4th Cir. 1997); *Valerio v. Putnam Associates Inc.,* 173 F.3d 35, 40 (1st Cir. 2001).

Moreover, even within the oil, gas, and chemical inspection industry in which Defendant operates, this is not a case of first impression. To the contrary, prior to the time Saybolt ceased using its FWW pay methodology in February 2012, at least four (4) other courts, including one within the Southern District of Texas, had previously held that a pay methodology virtually identical to Defendant's "fluctuating workweek," used by Defendant's competitors violated the FLSA. *See Brantley v. Inspectorate America Corp.*, 821 F.Supp.2d 879 (S.D. Tex. 2011)( addition of various premiums to and docking from inspectors' base pay violated the FWW); *Brumley v. Camin Cargo Control, Inc.*, 2010 WL 1644066, at *6 (D.N.J. April 22, 2010) (same);

*Adeva v. Intertek USA, Inc.*, 2010 WL 97991, at *2-3 (D.N.J. Jan. 11, 2010) (since inspectors received sea pay, day-off pay and/or holiday pay, in addition to their base pay, their salaries were not "fixed"); *Ayers v. SGS Control Services, Inc.*, 2007 WL 646326, at *6-7 (S.D.N.Y. Feb. 27, 2007) (because the plaintiffs received sea pay and day-off pay, their salaries were not "fixed," and they were entitled to full and proper overtime compensation).

Indeed, prior to this lawsuit, Saybolt sought the opinion of two (2) seasoned labor and employment attorneys regarding the permissibility of their FWW pay methodology. And, when both of the attorneys explained that Saybolt was likely violating the FLSA, Saybolt knowingly elected to continue using the pay policies at issue, in direct conflict with the advice they were given by both attorneys. *See PSOF, ¶ 34.*

The first attorney, Robert Ivey, who Saybolt contacted in May 2009, told Saybolt pointblank that the only existing legal authorities regarding Saybolt's pay methodology:

> identify the fundamental problem with the fluctuating work week formula [Saybolt] has been using with the inspectors… [and] stand for the proposition that that when an employee adds other payments- e.g., bonuses, incentives, premiums- to an employee's base salary, the result is that use of the fluctuating work week model is ***invalidated***.

*See id., ¶ 35.*

Ivey testified that he had red flagged the precise issues in this case for Saybolt, during its consultations with him in 2009. He even bolded and underlined the relevant portions of the authorities he sent to Saybolt. And, as the Dawn Weis' June 2, 2009 email back to Ivey indicates, she reviewed the documentation Ivey provided and it "shed some light" on the permissibility (or lack thereof) of Saybolt's pay methodology. Thus, as a result of their consultation with Ivey, Saybolt reviewed the relevant authorities and "understood what the issue was" with regard to the methodology at issue in this case. *See id., ¶¶ 36-37.*

However, Saybolt did not fully disclose the way they were paying their inspectors when

11

it consulted with Ivey.  For example, at the time he reviewed Saybolt's pay policies he was not aware that Saybolt reduced its inspectors' "base pay" under certain circumstances when they worked fewer than 40 hours in a workweek.  If Saybolt had informed him of the deductions, Ivey testified that would have "set off an alarm bell."  *See id.,* ¶ 38.

At the conclusion of Ivey's consultation with Saybolt, he explained to Saybolt that if Saybolt wanted to avoid FLSA liability it should stop paying premium/incentive pay to its inspectors and deal with it somehow in increased salary.  *See id.,* ¶ 39.

Ivey further explained that if and when Saybolt was ultimately found liable under the FLSA, it would be required to pay its inspectors back wages calculated at time and a half based on a 40 week work week, and liquidated damages as well.  *See id.,* ¶ 40.

Notwithstanding its consultation with Ivey and its knowledge it was likely violating the FLSA, Saybolt made no change to its fluctuating workweek pay policy, following its conversations with Ivey.  Indeed, armed with the knowledge that it was likely violating the FLSA, Saybolt chose not to change its pay policies for almost three (3) years after receiving the Ivey opinion.  *See id.,* ¶ 41.

Following its consultation with Ivey, a former inspector, Edward Lauer challenged Saybolt's FWW methodology in a lawsuit filed on August 7, 2009, in the Eastern District of New York.  *See Lauer v. Saybolt, LP, et al.,* 1:2009cv03442, D.E. 1.[5]  Saybolt made no change to its pay policies as a result of the *Lauer* lawsuit, for 2 ½ years thereafter.  *See id.,* ¶¶ 42-43.

While the *Lauer* lawsuit was pending, and prior to the filing of the Complaint in this case, Saybolt sought the opinion of its attorney in that case, Joseph Maddaloni, as to whether its

---

[5] The *Lauer* case was transferred to the District of New Jersey, where it remains pending under the Case Number 2:11-cv-02211.

fluctuating work week methodology was permissible. *See id.,* ¶ 44.

Citing the same authorities as Ivey had previously, Maddaloni explained to Saybolt that he thought that it was likely that the *SGS* opinion Ivey had previously advised them of would "hold" and that "Saybolt's options going forward [were] limited." *See id.,* ¶ 45.

Maddaloni advised Saybolt that, "while I have always taken the position that Saybolt's use and application of the FWW was defensible, I am concerned that under the present state of the law and fact that may no longer hold true." Further, Maddaloni, like Ivey previously, communicated to Saybolt that in the event a court determined that it had violated the FLSA by using its impermissible fluctuating workweek, it would be liable to its inspectors for damages calculated using the FLSA's default time and a half methodology, using a 40 hour workweek. *See id.,* ¶¶ 46-47.

Notwithstanding Maddaloni's opinion that its fluctuating workweek methodology was likely indefensible, Saybolt made no change to its pay policies for over two years after its consultation with Maddaloni. *See id.,* ¶ 48.

In addition to its continued use of incentive payments it knew to invalidate the use of the fluctuating workweek, Saybolt also reduced its inspectors' pay for reasons it acknowledges it knew were impermissible. *See id.,* ¶ 49.

Further, Saybolt failed to apprise either Ivey or Maddaloni of the fact that its inspectors' base pay was subject to deductions, when it requested their opinion regarding the viability of their fluctuating workweek pay methodology. *See id.,* ¶ 50.

This lawsuit was initially filed on January 26, 2010. *See* D.E. 1; *see also* PSOF, ¶ 51.

## MEMORANDUM OF LAW

### I.  Standard On Motion For Summary Judgment.

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) ( *en banc* ); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir.2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex,* 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.,* 529 F.3d 335, 339 (5th Cir.2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna,* 401 F.3d 347, 349 (5th Cir.2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.,* 402 F.3d 536, 540 (5th Cir.2005). The moving party may meet its burden by pointing out " 'the absence of evidence supporting the nonmoving party's case.' " *Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 312 (5th Cir.1995) (*quoting Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir.1992)).

Here, for the reasons discussed below, there are no genuine issues of material fact regarding Plaintiffs' claims for overtime compensation or liquidated damages.  Thus, Plaintiffs are entitled to summary judgment as a matter of law.

## II.    The FLSA Must Be Construed Liberally In Favor Of Plaintiffs.

As the Fifth Circuit has long held, FLSA cases are unusual because, unlike other laws, courts must construe the FLSA liberally in favor of employees. *See Reich v. Bay, Inc.*, 23 F.3d 110, 114 (5th Cir. 1994); *see also Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 296, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985) (stating that the FLSA should be construed to the fullest extent of its intended purpose); *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (explaining that the purpose of the FLSA is to protect workers from substandard wages and oppressive working hours); *Mitchell v. C. S. Vollmer & Co.*, 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196 (1955); *Donovan v. Sabine Irrigation Co.,* 695 F.2d 190, 194 (5th Cir. 1983).

Likewise, it has long been recognized that courts must construe exceptions/exemptions to the FLSA narrowly against the employer and in favor of the employee. *See Mitchell v. Kentucky Fin. Co.,* 359 U.S. 290, 295, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959); *McGavock v. City of Water Valley, Miss.*, 452 F.3d 423 (5th Cir. 2006)("we construe the FLSA liberally in favor of employees, and exemptions 'are to be narrowly construed against the employers seeking to assert them ....'"), *quoting Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960).  To that end, application of exceptions/exemptions to the pay requirements mandated by the FLSA are limited solely to those which "***plainly and unmistakenly***" fall within the terms and spirit of the FLSA.  *See Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896 (3d Cir. 1991)(emphasis added).

Here, Defendant erroneously maintains they paid Plaintiff properly pursuant to the FWW methodology exception to the time and one half overtime provisions of the FLSA articulated in 29 C.F.R. § 778.114.  It is well settled that the foregoing method of payment is an exception to the normal overtime rights of employees and thus, Defendant bears the heavy burden of proving that all the requirements for applying the method exist.  *See Donovan v. Brown Equip., and Serv. Tools, Inc.,* 666 F.2d 148, 153 (5th Cir.1982)("exceptions to the Act's requirements are to be narrowly construed against the employer asserting them"); *Bailey v. County of Georgetown,* 94 F.3d 152, 155-156 (4th Cir.1996)(requiring the employer, not the employee, to demonstrate that it complied with the express terms of 29 C.F.R.§778.114 by a preponderance of the evidence); *see also Dingwall v. Friedman Fisher Assocs.,* 3 F.Supp.2d 215, 221 (N.D.N.Y. 1998); *see also Aiken v. County of Hampton, S.C.,* 977 F.Supp. 390 (D.S.C. 1997); *see also Burgess v. Catawba County,* 805 F.Supp. 341, 348 (W.D.N.C.1992).  But, regardless of whether this Court narrowly or even broadly construes the applicability of the FWW methodology to Defendant's pay practices, the fact remains that Defendant has not, and cannot, meet its burden of proof to establish the legality of its FWW pay policy.

### III.   The FWW Method of Calculating Overtime.

#### A.   The FWW Method Creates Incentives to Short Employees' Pay - - This is Contrary to Congress' Intent in Enacting the FLSA.

Where the prerequisites of the FWW methodology are met, non-exempt employees may be paid a fixed salary regardless of the number of hours they work so long as they also receive half of their regular hourly rate of pay for each hour worked over forty. *See* 29 C.F.R. § 778.114. Thus, employees' regular hourly rate of pay is determined for any given week by dividing their fixed weekly wage by the total number of hours they worked that week. *See id.*  Accordingly,

under this payment method, the more hours that employees work, the lower their regular hourly rate of pay, and, consequently, the lower their effective overtime rate.

Under a legal application of this methodology, the net result creates a financial incentive for employers to require overtime work rather than hire new employees.  That is, the more overtime hours current employees work, the less expensive labor becomes. This significant discount on wages provides a strong financial incentive to employers to require ever more overtime hours and to limit the number of employees. *See, e.g.*, Christopher L. Martin et al., *The Fair Labor Standards Act and the Fluctuating workweek Scheme: Competitive Compensation Strategy or Worker Exploitation?* 44 Lab. L.J. 92 (1993). One could imagine the more amplified effect on employees' wages where, like here, the FWW pay practice is applied illegally.

### B.  The Fluctuating Workweek Has Prerequisites to Its Use.

Because the fluctuating workweek can so severely undercut the FLSA's goals, "an employer may not simply elect to pay the lower overtime rate under § 778.114.  The regulation requires that [its] conditions be satisfied before an employer may do so." *O'Brien*, 350 F.3d at 288; *see also*, *Monahan*, 95 F.3d at 1281 (employers must establish the prerequisites of § 778.114 "to utilize the fluctuating work week method of payment which is an exemption to the strict overtime requirements of the FLSA and which results in the salaried employee receiving half time overtime rather than time and a half overtime."); *Hunter v. Sprint Corporation*, 453 F.Supp.2d 44, 59 (D.D.C. 2006)("in order to prevent the use of fixed weekly salaries as a means of manipulating an employee's 'regular rate' under the statute, the FWW regulation strictly limits the circumstances in which an employer is authorized to treat the employee's 'regular rate' of pay as a variable and thus use the fluctuating overtime calculation method.")

The Fourth Circuit described the prerequisites to using the fluctuating workweek method in *Griffin v. Wake County,* 142 F.3d 712, 715 (4th Cir. 1998).

> The language of section 778.114 suggests that an employer must meet the following requirements before it can pay an employee pursuant to the fluctuating workweek method: 1) the employee's hours must fluctuate from week to week; 2) the employee must receive a fixed weekly salary that remains the same regardless of the number of hours that the employee works during the week; 3) the fixed amount must be sufficient to provide compensation at a regular rate not less than the legal minimum wage; 4) the employer and the employee must have a clear, mutual understanding that the employer will pay the employee the fixed weekly salary regardless of the hours worked; and 5) the employee must receive a fifty percent overtime premium in addition to the fixed weekly salary for all hours that the employee works in excess of forty during that week.

*Id.*

Other Circuit and district courts around the country likewise recognize these requirements as prerequisites to an employer using the fluctuating workweek method to calculate overtime pay.  *See, e.g.*, *O'Brien*, 350 F.3d at 288 ("For obvious reasons, an employer may not simply elect to pay the lower overtime rate under § 778.114. The regulation requires that four conditions be satisfied before an employer may do so"); *Davis v. Friendly Exp., Inc.*, 2003 WL 21488682, at *1 (11th Cir. 2003) ("The regulations, 29 C.F.R. § 778.114, permit the fluctuating workweek method of calculating compensation under FLSA only if the prerequisites are met"); *Adeva,* 2010 WL 97991, at *2; *Ayers,* 2007 WL 646326, at *9 ("The fluctuating workweek method may not be employed unless 'five discrete criteria' are satisfied.").  The same analysis should apply here.

### IV.   Saybolt Violated the Prerequisites to Using the FWW.

As discussed below, Saybolt ignored at least two of the FWW's strict requirements. Specifically, it did not pay Plaintiffs a fixed amount for straight-time pay, and it failed to establish a clear mutual understanding that the Plaintiffs would receive their base salary

regardless of the hours they worked in a week.  Having violated the FWW's prerequisites, Saybolt is not entitled to use the FWW to calculate Plaintiffs' overtime wages, as a matter of law.

### A.  Saybolt Failed to Pay Inspectors a "Fixed Weekly Salary" for Whatever Hours They Were Called Upon to Work in a Workweek.

The very issue before this Court regarding Defendant's FWW pay policy is not an issue of first impression.  Indeed, at least four (4) other courts have ruled that Defendant's **exact** pay methodology - - (i.e., paying 1/52 of each inspector's annual salary and adding in offshore, day-off and/or holiday pay, creating variable straight time weekly compensation), violates the FLSA's FWW method.  *See Brantley*, 821 F.Supp.2d at 888-889 (addition of various premiums to and docking from inspectors' base pay violated the FWW); *Brumley*, 2010 WL 1644066, at *6 (same); *Adeva,* 2010 WL 97991, at *2-3 (since inspectors received sea pay, day-off pay and/or holiday pay, in addition to their base pay, their salaries were not "fixed"); *Ayers,* 2007 WL 646326, at *8-9 (S.D.N.Y. 2007) (because the plaintiffs received sea pay and day-off pay, their salaries were not "fixed," and they were entitled to full and proper overtime compensation).  Equally as important, the DOL has explicitly stated that Defendant's pay policy at issue—addition of shift differentials or bonuses to employees' base pay—necessarily renders the fluctuating workweek inapplicable.  *See* Updating Regulations Issued Under the Fair Labor Standards Act, 76 Fed. Reg. 18832, 18848-18850 (April 5, 2011).

It is undisputed that Saybolt did not pay Plaintiffs a "fixed amount as straight time pay" for whatever hours they worked. PSOF, ¶ 15.  Instead, Plaintiffs' straight-time pay varied from week-to-week depending on whether they worked off-shore, on scheduled days-off and/or on scheduled company holidays, and whether their pay was reduced for working fewer than 40

hours in a week.  PSOF, ¶¶ 15-30.  Each of these variations in straight-time pay necessarily violates the FWW.

For example, in *O'Brien v. Town of Agawam*, the court stated that "by the plain text of §778.114, it is not enough that the officers receive a fixed minimum sum each week; rather, to comply with the regulation, the Town must pay each officer a "fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, *whether few or many*."  *Id.* at 288  In *O'Brien*, like here, the employees "receive[d] 1/52 of their annual base salary, irrespective of the number of shifts worked that week." *Id.*  But, that was not sufficient to meet the requirements of the fluctuating workweek because "that sum does not constitute all of the straight-time compensation that the officers may receive for the week," just like this case. *Id.*

Incentive pay like day-off, holiday pay and off-shore pay has repeatedly been found to preclude use of the FWW because it does not meet the "fixed straight-time pay" requirement. *See* Updating Regulations Issued Under the Fair Labor Standards Act, 76 Fed. Reg. at 18848-18850.  In fact, several of Saybolt's competitors' in the inspection industry, all of whom used a nearly identical pay method, have previously been found to have violated the FLSA  *Brantley*, 821 F.Supp.2d at 888-889; *Brumley,* 2010 WL 1644066, at *6; *Adeva,* 2010 WL 97991, at *2-3; *Ayers,* 2007 WL 646326.  Indeed, every court that has reviewed the scheme has found it violates the FLSA. *Id.*

Recently, two other courts found that two of Defendant's competitors, Intertek-Caleb Brett, and Camin Cargo, violated the FWW by paying day-off and holiday pay in addition to a fixed salary. *See Brumley,* 2010 WL 1644066, at *6 ("Such a scheme results in the absence of a "fixed salary" required by the regulation."); *Adeva,* 2010 WL 97991, at *2 (D.N.J. 2010)("due to such payments, Plaintiffs cannot received the fixed salary required to apply the FWW.").  As in

this case, the *Adeva* defendants paid inspectors "a percentage of their annual salary," and, if

eligible, "day-off pay" and "holiday pay." As the *Adeva* court explained, paying such bonuses:

> means that employees are not being paid a "fixed" salary regardless of hours
> worked. ... If the regulation merely required that employees received a
> minimum salary every week, which could be increased by such bonuses,
> then Defendants' argument would have substantial force. The regulation,
> however, contains no such thing. Consequently, the Court holds that
> Defendants are precluded from using the FWW method of payment as such
> premiums and bonuses run afoul of the "fixed salary" requirement of 29
> C.F.R. § 778.114(a).

*Id.*, *3.

Similarly, in *Ayers v. SGS, supra,* another inspection industry case, the court found

that the overtime system, like that used here, in *Adeva*, and *Brumley*, similarly violated the

FWW "fixed" salary requirement. Like Plaintiffs here, the plaintiffs in *Ayers* were a group of

Inspectors that were paid overtime under a half-time overtime method that included incentive

payments such as day-off pay. *See Ayers,* 2007 WL 646326, at *3 (S.D.N.Y. 2007). The *Ayers*

court found that the FWW requires that, "regardless of the number of hours worked in a

particular week, the employee's "straight time pay" cannot change, although overtime premiums

are not included in "straight time pay." Citing *O'Brien v. Town of Agawam*, the *Ayers* Court held

that the plain text of § 778.114 requires fixed straight-time pay each week, not just a minimum

pay. *Ayers*, 2007 WL 646326, at *9. As in *Adeva* and *Brumley*, the *Ayers* court found that the

addition of off-shore pay, day-off pay and holiday pay violated that requirement. *See id.*

Candidly, the violation in this case is more egregious than in *Ayers* or *Adeva*.

Specifically, here Defendant also reduced Plaintiffs' base salaries in weeks in which they worked

fewer than forty (40) hours. PSOF, ¶¶ 21-29. Such reductions in pay further demonstrate the

variation in weekly straight-time pay, and too are inconsistent with the requirements of §

21

778.114.[6]  *See Brumley*, 2010 WL 1644066, at *4 ("An employer may deduct from an FWW employee's vacation time bank for workdays missed, but may not deduct from the fixed salary for time an FWW employee misses from work."); *see also* Op. Letter of the Wage & Hour Div., 2006 WL 1488849 (May 12, 2006)("[An employer] may not make full day deductions from the salary of its fluctuating workweek employees when the employee has exhausted his or her sick leave bank or has not yet earned enough leave to cover the absence."); *O'Brien*, 350 F.3d at 288; *Adeva*, 2010 WL 97991, at *2; *Ayers*, 2007 WL 646326, at *9; *Heder v. City of Two Rivers, Wisconsin,* 295 F.3d 777 (7th Cir. 2002)(employer could not avail itself of fluctuating workweek pursuant to 778.114, because it docked pay when employees worked less than minimum number of hours it required); *Hagadorn v. M.F. Smith & Associates, Inc.*, 172 F.3d 878, fn 2 (10th Cir. 1999)(partial week deductions for furloughed employees inconsistent with the notion of a "fixed salary.").

As a result of both the addition and reductions to their pay, Plaintiffs' pay varied significantly depending on how much off-shore, day-off and/or holiday pay they earned and whether their base salaries were reduced in the pay period.

Based on its payment of various premiums in some weeks and deductions to pay in others, Defendant did not pay Plaintiffs a fixed straight-time pay each week. Based on this failure alone, it is "precluded from using the FWW method of payment as such premiums and bonuses run afoul of the 'fixed salary' requirement of 29 C.F.R. § 778.114 (a)." *Adeva*, 2010 WL 97991, at *3; *see also* Updating Regulations Issued Under the Fair Labor Standards Act, 76 Fed.

---

[6] The DOL issued three (3) different opinion letters between 1999 and 2006 stating that employers using the FWW were not permitted to deduct sick and vacation leave from employees' salaries. *See* Op. Letter of the Wage & Hour Div., 1999 WL 1002415 (May 28, 1999); Op. Letter of the Wage & Hour Div., 1999 WL 1002399 (May 10, 1999); Op. Letter of the Wage & Hour Div., 2006 WL 1488849 (May 12, 2006)).

Reg. at 18848-18850; *see also Ayers, supra.* As a result, Plaintiffs are entitled to summary judgment on the issue of liability.

> **B.     Saybolt and Plaintiffs Did Not Have a Clear Mutual Understanding that Plaintiffs Would Receive Their Base Salary When They Did Not Work a Full Schedule.  This is Further Evidence that the FWW Cannot Apply.**

In addition to its failure to pay Plaintiffs a fixed amount for straight time pay each week, Defendant also failed to meet the clear mutual understanding requirement of the FWW.  The FWW may not be used unless "the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek and the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked." 29 C.F.R. § 778.114.  Courts consistently have found this clear mutual understanding requirement essential to the use of the FWW.  *See, e.g., Valerio v. Putnam Associates Inc.*, 173 F.3d 35, 40 (1st Cir. 1999)("The parties must only have reached a 'clear mutual understanding' that while the employee's hours may vary, his or her base salary will not."); *Bailey v. County of Georgetown*, 94 F.3d 152, 156 (4th Cir. 1996) ("if a fluctuating pay plan is to be used, the employer and employee must have reached 'a clear mutual understanding... that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number'"); *Heder*, 295 F.3d at 780 ("only a "clear mutual understanding" that the base rate constitutes straight time for any overtime worked enables the employer to calculate pay under the fluctuating workweek plan"); *Davis v. Friendly Exp., Inc.*, 2003 WL 21488682, at *1 (11th Cir. Feb. 6, 2003) ("The regulations, 29 C.F.R. § 778.114, permit the fluctuating workweek method of calculating compensation under FLSA only if … the employee clearly understands that the straight-salary covers whatever hours he or she is required to work"). Where, as here, an

employee's base salary is subject to deductions for absences, the clear mutual understanding required for the FWW does not, and cannot, logically exist.

Here, the parties' mutually understood one thing—that Saybolt would reduce the Plaintiffs' base salary if they were not available to work at any scheduled work time for any reason. PSOF ¶¶ 22-30.  The understanding is clearly established in both the Company's written policy and its practices.  *See id.*  Saybolt's written policy was that if a Plaintiff was unavailable for work at any point during a workweek and did not have personal time-off or sick time accrued, Saybolt would reduce his or her base salary.  PSOF ¶ 22.  Moreover, Saybolt's records are replete with examples of Plaintiffs' base salaries being reduced for absences.  PSOF ¶ 24. The reductions are for myriad reasons, including absences in excess of accrued personal time-off, vacation days taken during the first six months of employment, partial weeks worked pursuant to Defendant's furlough program, and sick days taken in excess of accrued sick time. PSOF ¶¶ 22-29.  Where, as here, an employee's base salary is subject to deductions for absences, the clear mutual understanding required for the FWW does not exist.[7]  *See Brantley*, 821 F.Supp.2d at 892 ("In light of the salary deductions imposed by Defendant's sick and vacation leave policy, there is no 'clear mutual understanding' that Plaintiffs were being paid a fixed salary."); *McCumber v. Eye Care Centers of America, Inc.*, 2011 WL 1542671, at *12 (M.D. La.

---

[7] This precise situation was addressed *Hunter*, 453 F.Supp.2d at 60-61.  In *Hunter*, as here, the employer maintained a policy that employees without accrued leave to use would be docked pay for missing work.  The *Hunter* court held that under such circumstances, the necessary "clear mutual understanding" was not present.  *See Hunter*, 453 F.Supp.2d at 60 ("This is precisely the sort of arrangement that the Department of Labor has found to be inconsistent with the FWW method."); *see also Heder*, 295 F.3d at 780 (finding the employer could not use the fluctuating workweek, because employees who did not work a full workweek were "docked unless he has sick or vacation hours to use.").  The Department of Labor's longstanding position supports the *Hunter* decision.  The DOL opines "that an employer utilizing the fluctuating workweek method of payment may not make deductions from an employee's salary for absences occasioned by the employee."  DOL Opinion Ltr, May 12, 2006, 2006 WL 1488849; see also, Op. Letter of the Wage & Hour Div., 1999 WL 1002415 (May 28, 1999)("Deductions for absences for personal business or routine sickness generally may not be made from the salary of an employee paid on a fluctuating workweek basis."); Op. Letter of the Wage & Hour Div., 1999 WL 1002399 (May 10, 1999) ("deductions may be made from vacation or sick leave banks because of absences for personal reasons or illness, as long as no deductions are made from an employee's salary").

April 20, 2011) ("no sincere argument may be made by defendants that its intention was to pay plaintiff a set salary regardless of hours he worked in a given week," where defendant reduced plaintiff's pay in the 2 weeks in which plaintiff worked fewer than 40 hours); *Hagadorn, supra* (furlough program which provides for deductions for partial weeks worked inconsistent with idea of "fixed salary").

In light of these undisputed facts, the "clear mutual understanding" that Plaintiffs will receive their base salaries even in workweeks in which they do not work the full schedule of hours required by §778.114(c) is not present.   Therefore, Saybolt could not use the FWW method to calculate Plaintiffs' pay. *See* 29 C.F.R. § 778.114 (c); *Valerio*, 173 F.3d at 40; *Bailey*, 94 F.3d at 156; *Heder*, 295 F.3d at 780; *Davis*,  2003 WL 21488682, at *1; *Hunter*,  453 F.Supp.2d at 60; *McCumber*, 2011 WL 1542671, at *12.  Based upon the inapplicability of this factor of the FWW, summary judgment is appropriate in Plaintiffs favor for this reason alone.

**IV.   Unpaid Overtime Pay Must Be Calculated Based on a 40-Hour Work Week and at Time and One Half.**

Courts consistently hold that an employer that does not meet the prerequisites of the FWW is not entitled to its benefits. *See O'Brien*, 350 F.3d at 288; *McCumber,* 2011 WL 1542671, at *12; *Brumley*, 2010 WL 1644066, at *7; *Davis*, 2003 WL 21488682, at *1; *Ayers*, 2007 WL 646326, at *9; *Scott*, 2006 WL 870369, at *8; *Hunter*, 453 F.Supp.2d at 44; *Teblum*, 2006 WL 288932, at *3; *Robinson v. Webster County Bd. of Supervisors*, 2007 WL 162289, at *2 (N.D. Miss. Jan. 17, 2007); *Rainey*, 26 F.Supp.2d at 100; *Stokes*, 289 Conn. at 482-483. "In such a situation, the solution must be to fall back on FLSA's default position, which is to calculate hourly and overtime rates based on a regular workweek consisting of a fixed number of hours." *Ayers v. SGS Control Services, Inc.*, 2007 WL 3171342, at *2 (S.D.N.Y. Oct. 9, 2007), quoting *Yourman v. Dinkins*, 865 F.Supp. 154, 164-165 (S.D.N.Y. 1994).  Where there is no

fixed number of hours the salary is intended to cover, the FLSA default of 40 hours should be used, and time and one half wages paid. *See Ferrer v. SGS Control Services, et al.*, 04 Civ. 0916 (Unpublished Decision attached hereto as **EXHIBIT 1**) (M.D. Fla. Nov. 17, 2005); *Spires v. Ben Hill County*, 745 F.Supp. 690, 709 (M.D. Ga. 1990) ("The court holds the "fluctuating workweek" formula is not applicable, thus plaintiffs are entitled to one and one-half times the regular rate for all hours worked over forty in a workweek."). Indeed, as the court explained in *Yourman v. Dinkins*, 865 F.Supp. 154, 164-165 (S.D.N.Y. 1994), aff'd. 84 F.3d 655 (2d Cir. 1996), *rev. on other grounds sub nom Guiliani v. Yourman*, 519 U.S. 1145 (1997), the FWW requires this result.

In *Yourman*, Judge Preska explained that where an employer pays a fixed salary for fluctuating hours but does not meet the prerequisites fluctuating workweek, "the solution must be to fall back on FLSA's default position, which is to calculate hourly and overtime rates based on a regular work week consisting of a fixed number of hours. [i.e. dividing straight time earnings by 40 hours in the case of uniformed plaintiffs]." *Yourman*, 865 F.Supp. at 165. This conclusion was upheld by the Second Circuit which praised the district court's opinion as "thorough," "thoughtful" and "comprehensive." *Yourman v. Dinkins*, 84 F.3d 655, 656 (2nd Cir. 1996).[8]

Under virtually identical circumstances to those in the instant case, several courts have found that Saybolt's competitors violated the FWW by paying incentive payments to inspectors. Citing *Yourman*, the *Ayers* court found that because the defendant was not entitled to use the FWW, "overtime will be recalculated under the "default" method (i.e. time-and-a-half for all hours over 40)." *Ayers*, 2007 WL 3171342, at *3. Similarly, in another overtime pay case involving inspectors in this industry, the U.S. District Court for the Middle District of Florida

---

[8] Although *Yourman* was subsequently overturned on an unrelated issue, the court's holding with respect to the measure of damages remains good law. *See Feaser v. City of New York*, 1997 WL 724810 (S.D.N.Y. Nov. 18, 1997).

held that "[SGS] was not properly applying the terms of overtime.  Time and half will apply in this case." *See Ferrer* (trial transcript volume 6A, at 77-82); *see also Cash v. Conn Appliances, Inc.*, 2 F.Supp.2nd 884, 896 (E.D. Tex. 1997) (where an employer violates the requirements of §778.114 damages must be calculated by dividing the straight time pay by 40 hours).

There is a very good reason why courts refuse to allow an employer to use the FWW when the employer has been found to have violated the pre-requisites.  The FWW is an "exception to the normal requirements of the FLSA." *Yourman*, 865 F.Supp. at 165 (citing *Burgess v. Catawba Co.*, 805 F.Supp. 341, 348 (W.D. N.C. 1992); *see also Monahan v. County of Chesterfield, Va.*, 95 F.3d 1263, 1281 (4th Cir. 1996) (the fluctuating work week "is an exemption to the strict overtime requirements of the FLSA and which results in the salaried employee receiving half time overtime rather than time and a half overtime.").

Moreover, here Defendant's violated the FLSA with the full knowledge and expectation that they would ultimately be required to pay overtime damages to their inspectors calculated using the FLSA default time and one half methodology, based upon a 40 hour workweek.  *See* PSOF, ¶¶ 40, 47.  That is, despite the fact that two separate attorneys advised Defendant that it would be liable to its inspectors for overtime damages calculated using the FLSA's default methodology (using a 40 hour workweek), Defendant elected to knowingly continue to violate the FLSA.  *See id.*  In light of Defendant's knowing continued violation of the FLSA, notwithstanding its knowledge of precisely what its potential liability was, to calculate damages at anything other than a time and one half rate, based on a 40 hour workweek would be a windfall to Defendant and would only serve to reward them for their continued FLSA violation contrary to the FLSA's remedial purposes.

Here, Saybolt cannot use the FWW to calculate inspectors' overtime pay because it violated at least two of 778.114's five independent requirements. Therefore, overtime must be recalculated on a time-and-one-half basis for each workweek in which Plaintiffs worked overtime, and were not properly paid time and one half damages. *See Brumley*, 2010 WL 1644066, at *7; *Ayers*, 2007 WL 3171342, at *2.

**V.     Saybolt Is Liable for Mandatory Liquidated Damages.**

The FLSA provides that "[a]n employer who violates the [overtime] provisions of ... section 207 ... shall be liable to the employee or employees affected in the amount of ... their unpaid overtime compensation, ... ***and in an additional equal amount as liquidated damages***...." 29 U.S.C. § 216(b) (emphasis added). The liquidated damages provision of the FLSA amounts to a Congressional recognition that failure to pay the statutory minimum and overtime wages may be so detrimental to the maintenance of the minimum standard of living "necessary for health, efficiency and general well-being of workers" that double payment must be made to compensate employees for losses they might suffer by not receiving their lawful pay when it was due. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945); *Reich v. Helicopter Servs., Inc.,* 8 F.3d 1018, 1031 (5th Cir.1993)(The purpose of liquidated damages is to "compensate an employee for delay in payment.").

A court generally must award the full amount of liquidated damages as liquidated damages. *Singer v. City of Waco, Tex.,* 324 F.3d 813, 822–23 (5th Cir. 2003). To that end, it  is well settled that employees are entitled to liquidated damages under the FLSA as a rule, unless an employer can affirmatively show that its "act or omission giving rise to such action was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. The Fifth Circuit has held that an employer "faces a

'substantial burden' of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA." *Bernard v. IBP, Inc. of Neb.,* 154 F.3d 259, 267 (5th Cir.1998) (quoting *Mireles v. Frio Foods, Inc.,* 899 F.2d 1407, 1415 (5th Cir.1990)). Further, "even if the district court determines that the employer's actions were taken in good faith and based on reasonable grounds, the district court still retains the discretion to award liquidated damages." *Heidtman v. County of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999)(citing 29 U.S.C. § 260). "The dual and specific findings of good faith and reasonable grounds have been interpreted strictly" by the Fifth Circuit. *Lee v. Coahoma County, Miss.*, 937 F.2d 220, 227 (5th Cir. 1991)(citing *LeCompte v. Chrysler Credit Corp.,* 780 F.2d 1260, 1262-63 (5th Cir.1986)(further citation omitted).

The subjective component of good faith involves an employer's "honest intention to ascertain what the FLSA requires and to act in accordance with it," and the objective aspect of good faith considers the employer's "reasonable grounds for believing its conduct comported with the FLSA." *Friedman v. S. Fla. Psychiatric Assocs., Inc.,* 139 F. Appx. 183, 185-86 (11th Cir. 2005).

Here, the Defendant can demonstrate neither the subjective component of good faith, nor the objective component. While the Defendant did seek the advice of counsel as to whether its fluctuating workweek methodology complied with the FLSA, two different attorneys warned the Defendant that its pay policies did ***not*** comply with the FLSA.[9] *See* PSOF, ¶¶ 34-41, 44-48. Moreover, Robert Ivey, the first attorney consulted explained to the Defendant how it could come into compliance with the FLSA. *See id.,* ¶ 39. However, rather than heeding attorney Ivey's advice, Defendant sought the advice of a second attorney, Joseph Maddaloni. *See id.,* ¶¶

---

[9] It is also undisputed that Defendant never took any affirmative steps to ascertain whether its acknowledged deductions to its inspectors' pay were FLSA compliant. *See* PSOF, ¶ 50. This fact alone requires an award of mandatory liquidated damages. *See Brantley,* 821 F.Supp.2d at 897 (Defendant's competitor failed to demonstrate "good faith" to avoid imposition of liquidated damages where it made same impermissible deductions to its inspectors' "base pay").

34-41, 44-48.  Maddaloni also advised Defendant that that its pay policies were indefensible. *See id.,* ¶ 46.  But, despite the advice of both Ivey and Maddaloni and the ***actual knowledge*** that it was violating the FLSA, Defendant elected to continue the use of its illegal pay methodology for close to three years thereafter, **until it finally got sued**.  *See id.,* ¶¶ 34-41, 44-48.  In light of these undisputed facts, Defendant's election to continue to violate the FLSA does not permit a finding that it had an "honest intention to ascertain what the FLSA requires."  Similarly, in light of Defendant's actual knowledge regarding its continued FLSA violations, it cannot possibly demonstrate that it had "reasonable grounds for believing its conduct comported with the FLSA." Thus, because Defendant cannot demonstrate the subjective or objective component required to meet its substantial burden to avoid the liquidated damages, and Plaintiff is entitled to liquidated damages as a matter of law. *See Townley v. Floyd & Beasley Transfer Co.*, 1989 WL 205342, at *4 (N.D. Ala. Nov. 15, 1989)[10].

### VI.  Saybolt's Choice to Disregard the Legal Advice That It Was Violating the FLSA Renders The Violations Willful.

Under the FLSA, individuals raising a cause of action for unpaid overtime compensation must generally commence the action within two years of the alleged violation. 29 U.S.C. § 255(a). If, however, the cause of action arises out of a willful violation, the action may be brought within three years of the violation. *Id.* Although the court should not presume that a violation was willful in the absence of evidence, it may determine that conduct was willful where

---

[10] In *Townley*, the court reasoned:

> to reap the benefit of the good faith defense of § 260 based on the advice of counsel the defendant must honestly and truly seek the advice of counsel, counsel must give advice that is reasonable in a legal sense, and the defendant must act in strict conformity with that advice. As in this case, casually seeking and obtaining the advice of counsel is not even enough always to avoid a finding that a violation of the FLSA is "willful." This court's recollection of the evidence convinces it that while [the employer] can be said to have sought legal advice, it did not furnish counsel information necessary for a legitimate legal opinion upon which it could rely and base a subsequent defense of "good faith."

"an employer disregarded the very 'possibility' that it was violating the statute." *Alvarez v. IBP, Inc.,* 339 F.3d 894, 908-909 (9th Cir.2003) (citing 29 U.S.C. § 255(a)), *aff'd on other grounds,* 546 U.S. 21 (2005).   A willful violation arises when the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]...." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988); *see also Reich v. Bay, Inc.,* 23 F.3d 110, 117 (5th Cir.1994).   Plaintiffs bear the burden of proving willfulness. *See Cox v. Brookshire Grocery Co.,* 919 F.2d 354, 356 (5th Cir. 1990).

Although an employer's failure to obtain legal advice regarding FLSA compliance does not itself establish willfulness, "[r]eliance on the advice of counsel does not foreclose the possibility that a violation is 'willful'." *McCumber,* 2011 WL 1542671, at *13; *see also Mumby v. Pure Energy Services (USA), Inc*., 636 F.3d 1266, 1270 (10th Cir. 2011)(employer's FLSA violations willful notwithstanding attorney consult); *Mireles v. Frio Foods, Inc.,* 899 F.2d 1407, 1416 (5th Cir.1990).   Generally, an employer may assert a good-faith reliance on counsel only if it shows "(1) a request for advice of counsel on the legality of a proposed action, (2) full disclosure of the relevant facts to counsel, (3) receipt of advice from counsel that the action to be taken will be legal, and (4) reliance in good faith on counsel's advice." *United States v. Wenger,* 427 F.3d 840, 853 (10th Cir.2005) (internal quotation marks omitted); *see also United States v. Bush,* 626 F.3d 527, 539 (9th Cir.2010) ("An advice-of-counsel instruction requires the defendant to show that he made a full disclosure of all material facts to his attorney and that he then relied in good faith on the specific course of conduct recommended by the attorney.") (internal quotation marks omitted).

Here, it is undisputed that the Defendant sought the advice of counsel regarding its obligations under the FLSA. *See* PSOF, ¶¶ 34-41, 44-48.   Further, with regard to the incentive

pay issue, it can arguably be said (giving Defendant the benefit of the doubt) that Defendant disclosed the relevant facts to counsel, regarding their inclusion of incentives.  However, the two different lawyers, with whom Defendant consulted explained to Defendant that its pay methodology was *not* compliant with the FLSA.  *See id.*  Further, at least one of the lawyers, Robert Ivey, explained to Defendant precisely how it could ensure FLSA compliance: stop paying premium/incentive pay to its inspectors and deal with it somehow in increased salary.  *See id.,* ¶ 39.  Notwithstanding this advice, the Defendant elected to continue to violate the FLSA for almost three years thereafter.  *See id.,* ¶ 41.  This fact alone requires a finding that the Defendant's FLSA violations were willful.  *See Dole v. Elliott Travels & Tours, Inc.,* 942 F.2d 962 (6th Cir. 1991) (violation willful when the employer had prior notice that compensation terms violated the FLSA); *Martin v. Selker Brothers, Inc.,* 949 F.2d 1286 (3d Cir. 1991)(FLSA violation willful where employer continued using commission system despite doubts about its legality).  That is, a defendant can rely on the advice of counsel defense when the lawyer advised that there was no violation; to the contrary, a defendant cannot ignore advice that it is violating the law and still maintain the defense.  Respectfully, that would make no sense.

Additionally, it is undisputed that Defendant made impermissible deductions to its inspectors' base pay, pursuant to its well-established policies, notwithstanding its admitted *actual knowledge* that such deductions violated the FLSA.  *See* PSOF, ¶¶ 22-28, 49.  Given these knowing impermissible deductions, Defendant's FLSA violations in this regard were willful as well.  *See Dole; Martin, supra.*

For all of these reasons there can be no doubt that Defendant disregarded the very possibility that it was violating the FLSA.  As such, Defendant's violations were willful and a three year statute of limitations should apply to Plaintiffs' claims.

## CONCLUSION

For all the above reasons, Plaintiffs respectfully request that this Court enter an Order granting summary judgment finding that: (1) Defendant's FWW methodology violates the FLSA; (2) Plaintiffs damages should be calculated using the FLSA's default time and a half methodology, based on a 40 hour workweek; (3) Plaintiffs are entitled to liquidated damages; and (4) Defendant's FLSA violations were willful, such that the statute of limitations applicable to the instant claims is three years.

Dated: January 14, 2013

<div style="margin-left:40%">

Respectfully submitted,

**/s/ ANDREW FRISCH**
ANDREW FRISCH
MORGAN & MORGAN, P.A.
600 N. Pine Island Road, Suite 400
Fort Lauderdale, FL 33324
Tel: 954-318-0268
Fax: 954-333-3515
E-Mail: Afrisch@forthepeople.com

</div>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this <u>14th</u> day of January 2013, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all counsel of record.

<u>**/s/ ANDREW FRISCH**</u>
ANDREW FRISCH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LYLE DEROCHE and FELTON RAVIA,
individually and on behalf of all other
persons similarly situated,

      Plaintiffs,

v.                          CASE NO.: 4:11-CV-00433

SAYBOLT, LP,

      Defendant.

_____/

### **PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to the Rule 56 of the Federal Rules of Civil Procedure and the Local Rules for the United States District Court, Southern District of Texas, Plaintiffs, LYLE DEROCHE and FELTON RAVIA ("Plaintiffs"), file this Statement of Undisputed Facts in Support of Plaintiffs' Motion for Summary Judgment and states as follows:

### **Defendant, SAYBOLT, LP**

1. Defendant, Saybolt, LP's ("Saybolt" or "Defendant"), is an independent petroleum and analytical and calibration company. *See* Deposition of John Hein ("Hein Depo."), attached hereto as **EXHIBIT A**, p. 64. Saybolt takes measurements, samples, determines quantities and qualities of bulk commodities independently. *See id.* Saybolt's clients and partners include major oil and chemical companies, traders, shippers and buyers and insurance interests. *See* http://www.corelab.com/rd/saybolt/default.aspx?page=coorp_about, a copy of which is attached hereto as **EXHIBIT B**.[1]

2. Saybolt has offices and laboratories strategically located throughout the world,

---

[1] Since 1997, Saybolt has been wholly owned and operated by Core Labs Company. *See id.*

1

specifically for the purpose of performing inspection services on cargo that travels all over the world. *See id.*

3.  Saybolt's gross revenues for all years relevant to the instant case were well in excess of $500,000.00.  Specifically, in 2007 and 2008, Saybolt's revenues in North America alone were approximately $45,000,000.00. *See* Hein Depo., pp. 21-22.  In 2009, 2010, 2011 and 2012, Saybolt's revenues in North America were approximately $50,000,000.00. *See id.*

**Plaintiffs**

4.  To effectuate its purpose, Saybolt employed, and continues to employ, hundreds of inspectors ("Plaintiffs" or "Inspectors"), to perform the inspection work in the field, on high value oil, petroleum and chemical commodity cargo, and collect the necessary data.  *See id.*

5.  Plaintiffs worked for Saybolt at various times between 1993 and the present.  *See* Complaint, D.E. 1, ¶ 14; *see also* Answer to Complaint, D.E. 23, ¶ 14; *see also* Consents to Join filed in this case, generally.

6.  As Inspectors, Plaintiffs' job was to perform field inspections and sampling of crude and refined petroleum products, based on well-defined regulations.  *See* Hein Depo, pp. 64-65. Inspector work duties included routine inspection work in petroleum and petrochemical terminals and refineries, as well as inspection work on board barges and ships. *See id.; see also* Inspector I Job Description, attached hereto as **EXHIBIT C**.

**Plaintiffs Were Required to Work Overtime.**

7.  During their employment, Plaintiffs regularly worked, and continue to work, in excess of forty (40) hours per workweek, often working as many as 90 hours per workweek depending on the work load involved. *See* Answer to Complaint, ¶ 18; *see also* Lyle Derouche Weekly

Timesheet (Bates-Stamped as Saybolt Resp Ravia RFP 000165), attached as **EXHIBIT D**; see also various Timesheets attached as **EXHIBIT E**.

8.   Saybolt expected/expects Inspectors to work a minimum of forty hours per week. *See* Deposition of Dawn Weis ("Weis Depo."), attached as **EXHIBIT F**, at pp. 27-28.

9.   Plaintiffs were often required to work on their scheduled days off and on days that were scheduled as holidays.  There are many examples of Plaintiffs working on their scheduled days off.  *See, e.g.*, Timesheets attached collectively as **EXHIBIT G**.

**Plaintiffs' Overtime Pay.**

10.   At all times relevant to this lawsuit, prior to February 2012, Defendant paid Plaintiffs pursuant to a pay scheme known in the industry as "Chinese Overtime."  *See* Deposition of Lyle Deroche ("Deroche Depo."), attached hereto as **EXHIBIT H**, pp. 40-41.

11.   Under this overtime pay scheme (which Saybolt referred to as the Fluctuating Work Week Method ("FWW")), Saybolt calculated inspectors' overtime rate by dividing their weekly base pay, plus any applicable bonuses or premiums, by all of the hours they worked in the week, and dividing that rate in half.  *See* Weis Depo., pp. 21-22, 47-48.  Saybolt then paid inspectors a half-time, not time and one-half rate for hours worked in excess of 40 in the week.  *See id.*

12.   The result of the FWW payment scheme is that the more the Plaintiffs worked, the less they were paid per hour.  *See* Ravia Depo., pp. 23-24.

**Plaintiffs Did Not Receive a Fixed Amount of Non-Overtime Compensation Each Week- It Varied Depending on Hours Worked and Work Performed.**

13.   Saybolt's Employee Handbook makes no reference to the FWW or any overtime scheme, other than the FLSA's default time and a half methodology.  *See* Core Laboratories Guidebook for Employees, attached hereto as **EXHIBIT I**, pp. 15-16.  Similarly, the "Offer of Employment" letter Saybolt sent to each Plaintiff fails to reference the FWW, in discussing

overtime compensation. *See* Deroche Offer of Employment, attached hereto as **EXHIBIT J**. Rather, the sole document that references the FWW methodology regarding inspectors' pay is contained within the Fluctuating Workweek Half-Time Acknowledgement Form. *See* Weis Depo., p. 44. Thus, to the extent an inspector did not receive the FWW Acknowledgement there is no other document that would put the inspector on notice of the fact that Saybolt purported to pay him or her utilizing the FWW. *See id.,* p. 45.

14. At the inception of Plaintiffs' employment, Defendant required some Plaintiffs to sign a document memorializing their purported understanding that Defendant will pay the Inspector under Defendant's "Chinese Overtime" methodology described above. *See* Fluctuating Workweek Half-Time Acknowledgement Form ("FWW Acknowledgement")(Bates-Stamped as Saybolt Resp Ravia RFP 000092), attached as **EXHIBIT K;** However, many Plaintiffs were never presented with the FWW Acknowledgement form. *See, e.g.,* Deroche Depo., p. 39.

15. While, on its face, the FWW Acknowledgement appears to provide for a fixed amount of straight time pay each week, Defendant acknowledges that in actuality Plaintiffs' straight time pay (for the first forty hours) did not remain fixed, but instead, varied each week. *See* Weis Depo., pp. 57-58 ("It was very likely that it would fluctuate from week to week, yes… it would fluctuate, depending on what was paid as incentive and premium…"). And, because of the different combinations/types of pay each Plaintiffs received per week, and depending on the schedule and number of hours he/she worked, his/her compensation varied from week-to-week. *See id.*

### Plaintiffs Received Incentive Pay in Addition to Their Base Pay.

16. Saybolt paid Plaintiffs various shift differentials, in addition to their "salary,"

including day-off pay (for working on a scheduled day-off), holiday pay (for working on a company-recognized holiday), and off-shore pay (for work performed off-shore).  *See* Hein Depo., pp. 28-32.

17.  The additional payments were lump sum payments that were given to Plaintiffs when they performed extra work under one or more of the above conditions.  *See id.*, pp. 33-34

18.  The incentive payments did not vary depending on whether the hours were overtime or regular hours.  For example, an inspector that worked on a scheduled day-off was paid $55.00 for such work ("day-off pay" or "DOP"), in addition to his other straight time pay that week.  *See id.*

19.  As a result of incentive pay in differing amounts, depending on the nature and amount of work performed by Plaintiffs each week, each Plaintiff's straight-time (non-overtime) pay necessarily varied week-to-week—it was not a fixed amount.  *See* Weis Depo., pp. 57-58.

20. For example, Plaintiff, Dan Albright, received the following amounts as straight time (non-overtime) pay between May 4, 2007, and June 29, 2007,  including his base ("regular") pay, holiday pay, day-off pay and other non-discretionary bonuses: $530.92 for week one of pay period ending May 4, 2007; and  $1,015.92 for week two of pay period ending May 4, 2007; $1307.29 for week one of pay period ending May 18, 2007; and $597.29 for week two of pay period ending May 18, 2007; $588.99 for week one of pay period ending June 1, 2007; and $1,233.99 for week two of pay period ending June 1, 2007.

Similarly, Plaintiff, Jean Youssef Chamour, received the following amounts as straight time (non-overtime) pay between January 23, 2009 and March 20, 2009, including his base ("regular") pay, holiday pay, day-off pay and other non-discretionary bonuses: $2,135.62 for the week one of pay period ending January 23, 2009; and $913.46 for week two of pay period

ending January 23, 2009; $1, 846.50 for week one of pay period ending February 6, 2009; and

$1, 287.48 for week two of pay period February 6, 2009; $, 1417.68 for week one of pay period

February 20, 2009; and $1, 115.46 for week two of pay period ending February 20, 2009;

$1,426.74 for week one of pay period ending March 6, 2009; and $913.46 for week two for pay

period ending March 6, 2009; $1,070.96 for week one of pay period ending March 20, 2009; and

$1, 412.68 for week two of pay period ending March 20, 2009.[2]   *See* Paystubs attached,

collectively as **EXHIBIT L**.

### Plaintiffs' Base Pay Was Subject to Deductions.

21.     Defendant also maintained several pay policies, throughout the time when it

purported to use the FWW, which resulted in impermissibly docking of Inspectors' pay.

22.  For example, pursuant to Saybolt policy, Plaintiffs' salaries were subject to reduction

if they took personal time off, but had not accrued sufficient sick or vacation time to cover the

absence.  *See* Core Laboratories Guidebook for Employees, pp. 18-20; *see also* Weis Depo., p.

31 (policies applicable to all full-time employees, including inspectors); Hein Depo., pp. 58-60

(not paid if take vacation or sick day and no vacation or sick day available).

23.  Saybolt's written policy was such, that if a Plaintiff was unavailable for work

one or more days within a workweek, and did not have vacation or sick time accrued (and

vested), Saybolt would reduce his salary.  *See id.*

24.  Saybolt's payroll records produced in this lawsuit show at least three hundred sixty

one) such instances, where it reduced a Plaintiff-inspector's "base pay," on a week by week

basis, when he or she worked fewer than 40 hours in a work week.  *See* **EXHIBIT M**.[3]

---

[2] These are just examples of non-fixed weekly amounts for two Plaintiffs. Each Plaintiff in this lawsuit was paid in the same regard.

[3] Defendant also paid Plaintiffs an hourly rate (rather than their salary) in weeks in which they took accrued vacation or sick time, if their hours worked were greater than the multiple derived by multiplying the number of days worked

25.   Similarly, during Plaintiffs' first six (6) months of employment, pursuant to a written policy that Saybolt acknowledges was applicable to all Plaintiffs, Saybolt reduced Inspectors' weekly pay for any absences, even if they had accrued vacation time to cover an absence, because their vacation time had not yet vested.  *See* Core Laboratories Guidebook for Employees, p. 18; *see also* Hein Depo., pp. 58-60.

26.   Such reductions were made, regardless of the reason for the Inspector's unavailability.  *See id.*

27.   In addition to the foregoing reductions, Saybolt maintained a furlough program.  *See* Hein Depo., pp. 35-39.  Pursuant to the furlough program, which Saybolt used as a cost-saving measure when there was reduced work at certain branches, Saybolt would tell Inspectors they were not required to report to work on certain days.  *See id.*  However, when the Inspectors did not report to work, they were not paid for the days that they had not worked.  *See id.*

28.   Under the furlough program, which Saybolt acknowledges was a written policy applicable to all Inspectors, Inspectors were subject to being furloughed for partial workweeks (i.e. working some days within a workweek and being furloughed on other days within the same workweek).  *See id.*  When an Inspector was furloughed for a partial workweek, they were paid only for the days in the workweek on which they actually worked.  *See id.*  Thus, the furlough policy too resulted in impermissible deductions to Inspectors' pay.

29.   Since, the schedules of Inspectors varied week-to-week, whereby sometimes an Inspector earned a combination of off-shore, day-off and/or holiday pay, and sometimes not, each week the amount of Inspectors' straight time pay was variable, and it was not a fixed amount. *See* Weis Depo., pp. 57-58.  Similarly, because the straight-time pay was subject to

---

times eight (8) hours.  Thus, in weeks in which an Inspector worked more than eight (8) hours per day, and took one (1) or more vacation or sick day, his straight-time pay varied as well.  *See* Weis Depo., p. 65, 69.

docking, under Defendant's policies and procedures uniformly applicable to all Inspectors, such straight time pay was not "fixed." *See id.*, pp. 62-63.

30. Because their straight time pay was subject to deductions, as described above, Plaintiffs could not and did not understand that their base pay was a fixed amount. *See* Deroche Depo., pp. 60-62.

### Defendant's FLSA Violations Were Knowing and Willful.

31. It is uncontested that Defendant's FLSA violations, at issue here, were knowing and willful.

32. Significantly, the FWW's definition of "fixed salary" has remained **unchanged** for over 60 years, despite countless opinions on the subject. *See Overnight Transp. v. Missel*, 316 U.S. 562 (1942); *Spires v. Ben Hill County*, 745 F.Supp. 690 (M.D. Ga. 1990); *Flood v. New Hanover County*, 125 F.3d 249 (4th Cir. 1997); *Valerio v. Putnam Associates Inc.,* 173 F.3d 35, 40 (1st Cir. 2001).

33. Moreover, even within the oil, gas, and chemical inspection industry in which Defendant operates, this is not a case of first impression. To the contrary, prior to the time Saybolt ceased using its FWW pay methodology in February 2012, at least four (4) other courts, including one within the Southern District of Texas, had previously held that a pay methodology virtually identical to Defendant's "fluctuating workweek," used by Defendant's competitors violated the FLSA. *See Brantley v. Inspectorate America Corp.*, 821 F.Supp.2d 879 (S.D. Tex. 2011)( addition of various premiums to and docking from inspectors' base pay violated the FWW); *Brumley v. Camin Cargo Control, Inc.*, 2010 WL 1644066, at *6 (D.N.J. April 22, 2010) (same); *Adeva v. Intertek USA, Inc.*, 2010 WL 97991, at *2-3 (D.N.J. Jan. 11, 2010) (since inspectors received sea pay, day-off pay and/or holiday pay, in

addition to their base pay, their salaries were not "fixed"); *Ayers v. SGS Control Services, Inc.*, 2007 WL 646326, at *6-7 (S.D.N.Y. Feb. 27, 2007) (because the plaintiffs received sea pay and day-off pay, their salaries were not "fixed," and they were entitled to full and proper overtime compensation).

34. Indeed, prior to this lawsuit, Saybolt sought the opinion of two (2) seasoned labor and employment attorneys regarding the permissibility of their FWW pay methodology. *See* Defendant Saybolt LP's First Supplemental Objections and Answers to Plaintiff's First Set of Interrogatories, attached hereto as **EXHIBIT N**. Saybolt knowingly elected to keep the pay policies at issue in direct conflict with the advice they were given by both attorneys.

35. The first attorney, Robert Ivey, who Saybolt contacted in May 2009, told Saybolt that the only existing legal authorities regarding Saybolt's pay methodology:

> identify the fundamental problem with the fluctuating work week formula [Saybolt] has been using with the inspectors... [and] stand for the proposition that that when an employee adds other payments- e.g., bonuses, incentives, premiums- to an employee's base salary, the result is that use of the fluctuating work week model is ***invalidated***."

*See* Email from Robert Ivey to Dawn Weis dated May 29, 2009, attached hereto as part of **EXHIBIT O** (emphasis added); *see also* Deposition of Robert Ivey ("Ivey Depo."), attached as **EXHIBIT P**, pp. 41-44, 46, 49-51 ("that was the message I was sending, that there's a potential issue here, because there are some cases that have found that such payments invalidate the fluctuating workweek.").

36. Ivey testified that he had red flagged the precise issues in this case for Saybolt, during its consultations with him in 2009. *See* Ivey Depo., p. 51. He even bolded and underlined the relevant portions of the authorities he sent to Saybolt. *See id.* at pp. 60-61; *see also* Exhibit O; *see also* Weis Depo., p. 75. And, as the Dawn Weis' June 2, 2009 email back to Ivey indicates, she reviewed the documentation Ivey provided and it "shed some light" on the

permissibility (or lack thereof) of Saybolt's pay methodology. *See id.*

37. Thus, as a result of their consultation with Ivey, Saybolt reviewed the relevant authorities and "understood what the issue was" with regard to the methodology at issue in this case. *See* Ivey Depo., p. 62.

38. At the time he reviewed Saybolt's pay policies he was not aware that Saybolt reduced its inspectors' "base pay" under certain circumstances when they worked fewer than 40 hours in a workweek. *See* Ivey Depo., pp. 80-81. If Saybolt had informed him of the deductions, Ivey testified that would have "set off an alarm bell." *See id.,* pp. 74-75.

39. At the conclusion of Ivey's consultation with Saybolt, he explained to Saybolt that if it wanted to avoid FLSA liability it should stop paying premium/incentive pay to its inspectors and deal with it somehow in increased salary. *See id.,* pp. 83, 93.

40. Ivey further explained that if and when Saybolt was ultimately found liable under the FLSA, it would be required to pay its inspectors back wages calculated at time and a half based on a 40 week work week, and liquidated damages as well. *See id.,* p. 86.

41. Notwithstanding its consultation with Ivey and its knowledge it was likely violating the FLSA, Saybolt made no change to its fluctuating workweek pay policy, following its conversations with Ivey. *See* Weis Depo., p. 76. Indeed, armed with the knowledge that it was likely violating the FLSA, Saybolt failed to change its pay policies for almost three (3) years after receiving the Ivey opinion. *See* Hein Depo., p. 29 (Saybolt did not cease using incentives until February 2012).

42. Following its consultation with Ivey, a former inspector, Edward Lauer challenged Saybolt's FWW methodology in a lawsuit filed on August 7, 2009, in the Eastern District of

New York. *See Lauer v. Saybolt, LP, et al.,* 1:2009cv03442, D.E. 1.[4]

43.     Saybolt made no change to its pay policies as a result of the *Lauer* lawsuit, for 2 ½ years thereafter.

44.     While the *Lauer* lawsuit was pending, and prior to the filing of the Complaint in this case, Saybolt sought the opinion of its attorney in that case, Joseph Maddaloni, as to whether its fluctuating work week methodology was permissible.  *See* Emails between Maddaloni and Saybolt collectively attached hereto as **EXHIBIT Q**.

45. Citing the same authorities as Ivey had previously, Maddaloni explained to Saybolt that he thought that it was likely that the *SGS* opinion Ivey had previously advised them of would "hold" and that "Saybolt's options going forward [were] limited."  *See* Email from Maddaloni to Gwen Schreffler, John Barbarise, Mark Elvig and Dawn Weis, dated January 13, 2010.

46.     Maddaloni advised Saybolt that, "while I have always taken the position that Saybolt's use and application of the FWW was defensible, I am concerned that under the present state of the law and fact that may no longer hold true."  *See* Email from Maddaloni to Gwen Schreffler, John Barbarise, Mark Elvig and Dawn Weis, dated January 12, 2010.

47.     Further, Maddaloni, like Ivey previously, communicated to Saybolt that in the event a court determined that it had violated the FLSA by using its impermissible fluctuating workweek, it would be liable to its inspectors for damages calculated using the FLSA's default time and a half methodology, using a 40 hour workweek.  *See* Deposition of Joseph Maddaloni ("Maddaloni Depo."), attached as **EXHIBIT R**, pp. 86-88.

48.     Notwithstanding Maddaloni's opinion that its fluctuating workweek methodology was likely indefensible, Saybolt made no change to its pay policies for over two years after its

---

[4] The *Lauer* case was transferred to the District of New Jersey, where it remains pending under the Case Number 2:11-cv-02211.

was likely indefensible, Saybolt made no change to its pay policies for over two years after its consultation with Maddaloni.  *See* Hein Depo., p. 29.

49.    In addition to its continued use of incentive payments it knew to invalidate the use of the fluctuating workweek, Saybolt also reduced its inspectors' pay for reasons it acknowledges it knew were impermissible.  *See* Weis Depo., pp. 34-35 (outlining permissible deductions); compare Hein Depo., pp. 58-60; *see also* Exhibit M.

50.    Further, Saybolt failed to apprise either Ivey or Maddaloni of the fact that its inspectors' base pay was subject to deductions, when it requested their opinion regarding the viability of their fluctuating workweek pay methodology.  *See* Ivey Depo., pp. 79-81; Maddaloni Depo., p. 96.  Thus, neither Ivey nor Maddaloni rendered an opinion regarding same.  *See id.*

51.    This lawsuit was initially filed on January 26, 2010.  *See* D.E. 1.  Saybolt made no change to its pay policies at issue herein for over two years thereafter.  *See* Hein Depo., p. 29.

Dated:  January 14, 2013

Respectfully submitted,

**/s/ ANDREW FRISCH**
ANDREW FRISCH
MORGAN & MORGAN, P.A.
600 N. Pine Island Road, Suite 400
Plantation, FL 33324
Tel: 954-318-0268
Fax: 954-333-3515
E-Mail: afrisch@forthepeople.com

**Counsel for Plaintiffs**

12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of January 2013, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all counsel of record.

/s/ ANDREW FRISCH
ANDREW FRISCH